G. A. KING, *Appellee,* v. THE WESTERN UNION TELEGRAPH COMPANY, *Appellant.*

No. 15,912.

### SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT — *Verdict and Findings Unsupported by Evidence.* Where a general verdict and the special findings of fact are unsupported by any evidence they should be vacated and set aside, and a judgment entered thereon is erroneous and will be reversed.

Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion filed December 11, 1909. Reversed.

*George H. Fearons, Charles Blood Smith,* and *Samuel Barnum,* for the appellant.

*Orla H. Foster, Fred J. Evans,* and *Fred S. Dunn,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in the district court of Finney county by G. A. King against the Western Union Telegraph Company, to recover damages claimed to have been sustained by the plaintiff on account of the failure of the defendant to deliver a message which it received from the plaintiff for transmission to Lacy Greer, at Holbrook, Ariz. The plaintiff recovered a judgment for $1000.60. The defendant brings the case here by appeal.

The plaintiff claims that in 1904 he purchased of Lacy Greer 100 range horses, to be delivered at Holbrook, Ariz., when they could be gathered up off of the range and the plaintiff could get there to receive them. On November 8 the plaintiff received a letter from Greer that he had 100 horses on hand, but could not keep them up very long, and if the plaintiff wanted them he should come by November 10, and, if coming, to wire to that effect at once. The plaintiff answered by wire that he would start on the 9th. This would enable him to arrive there on the 11th. The message was sent by the defendant, but was not delivered. Greer, not hearing from his letter, held the horses until the 10th, and then turned them out upon the range again. The plaintiff reached there at noon on the 11th, but the horses had become so scattered that it was impossible to round them up again and the sale could not be made.

The plaintiff claims that if the message had been delivered in the usual course of business the horses would have been held until his arrival and he would have received them at a cost of $10 per head. Their market value at that time was $20 per head. The nondelivery

of the message, therefore, caused him to lose $1000 in profits, in addition to the 60 cents paid for the message.

The defendant claims that a sale was not made; that the plaintiff did not acquire any property in the horses. If the message had been delivered as expected, it might be possible that the plaintiff would have purchased the horses; but that is uncertain—a mere matter of conjecture, and certainly he should not recover profits upon a purchase he did not make.

The claim on the part of the defendant presents a very important question, and the point, if well taken, will dispose of the case. The evidence contained in the record upon the question of a sale to the plaintiff by Greer is very meager and is as follows: A part of the plaintiff's business was the buying and selling of range horses. He had dealt with Greer and knew that the latter had horses upon the range in great numbers, estimated at 5000. The plaintiff resided at Garden City, Kan.; Greer, at Holbrook, Ariz. During the year 1904 they corresponded with each other concerning horses. None of the correspondence is shown by the evidence. On November 8, 1904, the plaintiff received a letter from Greer, which was destroyed soon after it was received. The plaintiff testified to his memory of its contents upon this subject. The evidence reads:

"Ques. I will ask you to state, as nearly as you remember, the proposition which Mr. Greer made to you in this letter, with reference to his selling you these horses and how many of them there were. Ans. Why, he—I had been corresponding with him for quite awhile in regard to these horses, and had wrote him that I would want the horses. So he wrote and told me that he had 100 head of horses, and that he could not hold the horses much longer, as they were losing flesh, and if I wanted them to wire him and not take time to write, and wire him in care of Dick Greer, whether I was coming or not.

"Q. What price, if any, was named to you for which he would sell the hundred? A. I give ten dollars per head for the horses."

In answer to this letter the plaintiff sent a message which reads:

                                        "11/8-1904.
"To Lacy Greer, Holbrook, Ariz., c/o F. D. Greer: Your letter received. I will start there to-morrow or next day.                        G. A. KING."

He started for Holbrook the next day and arrived there on the 11th of November, at noon, but the message had not been delivered, and Greer, not expecting the plaintiff, had turned the horses out upon the range again, where they had scattered so that it was impossible to complete the sale. The plaintiff, upon this point, testified as follows:

"Ques. When you speak of them having been turned loose on the range you may tell exactly what you mean by that? Ans. Well, Mr. Greer not knowing I was coming to take the horses, had turned them loose; simply turned them loose on the range, because I had not appeared there to buy or receive the horses."

This constitutes all the evidence given to show a sale of horses by Greer to the plaintiff. We concur with the defendant in the conclusion that there is a total failure of proof upon this subject. It does not appear that any communication was had between the plaintiff and Greer before the letter received by the plaintiff on November 8 in which a sale of horses was considered. It does not appear that Greer agreed to take $10 per head for these horses, or any other sum; it does not appear that the plaintiff agreed with Greer that he would give that sum, or any other amount. The letter received by the plaintiff on November 8, as given by him from memory, constitutes the whole contract. That letter, standing alone, falls far short of a contract. Giving it a very liberal interpretation, it might be said that the plaintiff in a prior letter had stated that he would want the horses. But what horses? These particular horses were then loose upon the range, in a herd of 5000. He merely stated that he would want them; he does not

say how much he would give, nor does it appear that a price was understood.

In his letter Greer stated that he had 100 horses and inquired of the plaintiff whether he wanted them or not; if he did, and was coming out, to wire to that effect at once. If they already belonged to the plaintiff, why ask, "if you want them, wire," etc.? The plaintiff, in explaining why the horses were turned upon the range again, says "it was because I had not come to buy or receive them." It is alleged in the petition that in the letter received by the plaintiff on November 8 Greer stated that unless he received a message from the plaintiff that the latter would be there by November 10 the horses would be sold to another party and turned out upon the range. This evidence shows conclusively that there was no sale made, and neither of the parties understood that any change in ownership had taken place. The most that can be said is that if the plaintiff's message had been delivered a sale might possibly have been consummated, but even that is doubtful. If it be conceded that the letter of November 8 amounted to an offer to sell, still this concession would not strengthen the position of the plaintiff, for his failure to accept the offer effectually prevented a contract of sale.

The jury returned with the general verdict special findings of fact which seem to give an interpretation to the testimony in which we can not concur. Among these findings of fact are the following:

"(7) Ques. Had Lacy Greer agreed to sell any horses to the plaintiff, G. A. King; and, if so, how many and at what price? Ans. Yes; 100 head at $10 a head.

"(12) Q. Did the failure of the defendant to deliver the message in question within a reasonable time result in any direct loss or proximate damages to the plaintiff, and, if so, in what manner and to what amount, in addition to the cost of the transmission of the telegram, if anything? A. Yes. The amount of $1000.60 and costs of action, $1000 being the difference in purchase

price of $10 per head and market value of $20 per head on or about November 8, 1904; 60 cents being the cost of the message."

It is claimed that under the rule long followed by this court special findings of fact found by a jury will not be disturbed because against the weight of the evidence, and therefore these findings of fact are conclusive. This rule has always been applied by this court subject to the modification announced in the case of *Streeter v. Dowell,* 43 Kan. 545, in which the syllabus reads:

"It is the policy of this court, evidenced by a long line of decisions, to sustain the findings of a jury, especially when passed upon and approved by the trial court, if there is any proper evidence that fairly tends to sustain such findings; but where the evidence to sustain such findings grows out of a conversation that is so disconnected, uncertain, incomplete and shadowy that it is questionable whether it rises to the dignity of evidence at all, we think the exception, and not the rule, should govern."

We think this syllabus aptly describes the testimony in this case and places it within the exception to the rule. The letter received from Greer November 8, in which he states "if you want the horses, come," indicates that he at that time did not regard the plaintiff as their owner. If, on the other hand, the letter was intended as a mere offer to sell upon terms previously understood, which would be a completed sale when the plaintiff accepted, then the message can not fairly be construed into any such an acceptance. It merely acknowledged receipt of the letter and announced that the plaintiff was coming.

These horses were a bunch of 100 "rounded up" by Greer out of a herd of 5000. It might be that the plaintiff wanted to see them before closing the sale. To interpret this message in a way that would deprive him of that privilege can only be done by an arbitrary interpretation of language which nothing in the record will justify. How the jury were misled into resting the

verdict and conclusions of fact upon evidence purely imaginary need not be considered.

We think the finding that there was a completed contract of sale between Greer and the plaintiff wholly unsupported by the evidence. It follows that the plaintiff was not entitled to recover anything for loss of profits. This part of the judgment is erroneous, and therefore the judgment is reversed.