No. 20,912.

THE SHAWNEE MILLING COMPANY, *Appellee*, v. THE POSTAL TELEGRAPH-CABLE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. TELEGRAM—*Dictated Over Telephone—Nature of Contract—Error in Transmission — Liability.* Where a telegraphic message is dictated over a telephone and is thus received by a telegraph company for transmission it will not be presumed that any preferential or discriminatory service in violation of law is intended, and the message will be considered as if it were written on the ordinary blank forms furnished by the telegraph company, and the company's liability for an error in transmission is neither greater nor less nor different than if the message were delivered in the usual and more formal mode of sending telegrams.

2. SAME—*Intrastate Business — Contract Limiting Liability.* In conducting its intrastate business a telegraph company may make reasonable stipulations limiting its liability, but in the absence of positive or permissive statutes governing the subject, the reasonableness of any such stipulation is a question for judicial determination.

3. SAME—A stipulation limiting a telegraph company's liability in damages for an error in transmission of a telegram to a mere return of the rate exacted for sending it is unreasonable.

4. TELEGRAM — *Partly in Code — Liability for Error in Transmission.* Where a telegram is partly in code, but bears enough plain English on its face to apprise the telegraph company that it is a business message, and the company's manager in charge where the telegram was received knew it was a business message, although he did not know its details, the company was charged with sufficient notice of its importance and with notice that a failure to transmit the message correctly would probably lead to consequential damages, and the telegraph company is liable therefor.

5. SAME. The damages attendant on a failure to transmit a business message examined and held to be certain and proximate, and that a recovery can be had thereon.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed July 7, 1917. Affirmed.

*Edwin E. Brookens,* of Topeka, for the appellant.

*Robert Stone,* and *George T. McDermott,* both of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered a judgment for damages against the defendant for an error in the transmission of a telegram delivered orally by telephone for forwarding to a firm of grain dealers in Wichita. The telegram was partly in code. It reads:

> "TOPEKA, KANSAS, August 7th, 1914.
> "*Wagner Grain Co., Wichita, Kansas.*
> "Perfume have booked fluting accursed debating Kansas City basis boundary.        "SHAWNEE MLG. CO."

The telegram was an acceptance of an offer of ten thousand bushels of wheat. The code word for such a purchase was "fluting." It was erroneously transmitted to read "flirting," which meant six thousand bushels. The more or less proximate consequences of this error occasioned this lawsuit.

One of the defenses of the telegraph company was that the telegraphic message was received for transmission as an unrepeated telegram, and that the terms and conditions for the receipt and transmission of such messages were those set forth on its regular blank forms for telegrams, parts of which read:

### THE POSTAL TELEGRAPH-CABLE COMPANY.
"(Incorporated)

"Transmits and delivers the within telegram subject to the following terms and conditions:

"To guard against mistakes or delays, the sender of a telegram should order it REPEATED; that is telegraphed back to the originating office for comparison. For this, one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, THIS IS AN UNREPEATED TELEGRAM AND PAID FOR AS SUCH, in consideration whereof it is agreed between the sender of the telegram and this Company as follows:

"1. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED telegram, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any REPEATED telegram, beyond fifty times the sum received for sending the same, UNLESS SPECIALLY VALUED; nor in any case for delays arising from unavoidable interruption in the working of its lines; NOR FOR ERRORS IN CIPHER OR OBSCURE TELEGRAMS."

It will thus be seen that the telegraph company has two principal schedules of rates—one for unrepeated messages in which its liability for errors in transmission was limited to

the amount received by it for sending the message, and a rate fifty per cent higher for repeated messages in which its liability for erroneous transmission was stipulated in advance to be fifty times the sum paid for the service. These rates must be filed with the public utilities commission and may not be departed from by the telegraph company without the assent of that tribunal; and all discrimination and preferences in rates or service is forbidden by the public utilities act. (Laws 1911, ch. 238, §§ 3, 10-12, 20, 30, Gen. Stat. 1915, §§ 8329, 8337-8339, 8347, 8358.) The service performed by the defendant must be held to have been in pursuance of its regular corporate business, and it should be assumed that no discriminatory or preferential service was being extended to plaintiff when the defendant received plaintiff's message by telephone for transmission to Wichita. It must be considered as if the plaintiff had formally written the message in the usual way on regular blanks furnished by the company. That telegraph companies frequently accept messages by dictation over a telephone is well known. It would be harsh to say that any illegal preference forbidden by section 8401 of the General Statutes of 1915 is intended in so doing. Nor would it be just to hold that in extending this apparently harmless courtesy the telegraph company thereby places itself in a less favorable position or assumes a greater responsibility than it does when it receives for transmission telegrams written in the usual way with the usual conditions attached. Nevertheless, if this practice is to be regarded as a general one, carrying a different rate or subjecting the telegraph company to a different degree of responsibility, a uniform schedule of rates and charges for such service and the regulations pertinent thereto should be filed with the public utilities commission and subject to its approval; and such rates and service are invalid until they are so filed; and when formally promulgated they may not be departed from with impunity. (Gen. Stat. 1915, §§ 8398, 8400, 8416; *The State, ex rel., v. Postal Telegraph Co.*, 96 Kan. 298, 150 Pac. 544; *Mollohan v. Railway Co.*, 97 Kan. 51, 154 Pac. 248.)

The court is of opinion that in the absence of a distinct schedule of rates applying to telegrams delivered for transmission by telephone, the case is governed by the conditions

attaching to the usual and more formal mode of transacting its corporate business.

The telegraph company is liable, if at all, according to the terms of its contract of service, unless that contract is an unreasonable limitation of its liability for negligence. It was pleaded that the message was received for transmission as an unrepeated message. The plaintiff's general denial traversed this as well as the other allegations of the answer, but there is seemingly no contention that the case should turn upon whether the telegram was to be transmitted as a repeated or an unrepeated message, nor is it intimated that it was transmitted as a repeated message "specially valued" according to the rates and terms for transmission of such messages.

Is this particular limitation of liability a reasonable one? This question is settled as to interstate messages. (*Bailey v. Telegraph Co.*, 97 Kan. 619, 623, 156 Pac. 716; Id., 99 Kan. 7, 160 Pac. 985; *Kirsch v. Telegraph Co.*, 100 Kan. 250, 164 Pac. 267.) The case at bar involves only an intrastate telegraph message, and we have no state statute specifically authorizing common carriers to limit their common law liability as does the Carmack amendment (Part 1, 36 U. S. Stat. at Large, ch. 309, pp. 539, 544) ; and telegraph companies are somewhat analogous to carriers; but we do have a statute giving countenance to such limitation by railroad carriers upon the order or approval of the public utilities commission. (Gen. Stat. 1915, § 8435.) There is certain language in the public utilities act which seems to recognize the telegraph company's right to limit its liability. The schedules, classifications, rates, rules and regulations for telegraph service must be reasonable and just, and the commission may amend or alter them. (Gen. Stat. 1915, §§ 8390, 8408) ; any matter concerning such public-service business which is unreasonable, unjust, or discriminative must be investigated and corrected. (§ 8416.) The requirement that telegraph companies file their rates with the commission, and the section which fixes as legal maxima the rates in vogue on January 1, 1911 (§ 8358), and the unchallenged exaction and maintenance of those rates, and upon the conditions attaching thereto in the telegraph company's contracts of service are potent reasons for recognizing reasonable limitations of liability of the telegraph company as valid and binding. Of

Milling Co. v. Postal Telegraph Co.

course, the public utilities commission has nothing directly to do with the legal liabilities of telegraph corporations on questions of damages, but so far as their liabilities enter into the cost of conducting their business, those liabilities are a proper element of consideration in rate making. The telegraph rates are based, in part, upon the legal consequences which attach to the service. If a higher degree of responsibility attaches to the service, a greater rate must be exacted. It has been held in this state that a common carrier (without a permissive statute) can not impose a condition exempting him from liability for his' own negligence, and a telegraph company is so much like a carrier that its liability for negligence should be governed by similar principles, yet reasonable limitations of liability other than those which do not seek to excuse its gross negligence have been upheld (*Russell v. Telegraph Co.,* 57 Kan. 230, 233, 45 Pac. 598) ; while stipulations restricting liability to an insignificant sum where the negligence was gross have been disregarded. (*Telegraph Co. v. Crall,* 38 Kan. 679, 17 Pac. 309.)

Here the stipulated limitation is for a return of the cost of the message, probably twenty-five or forty cents. All the annoyance, delay, business inconvenience and financial damage so commonly attendant on a telegraph company's failure to perform its self-assumed public service are limited to an insignificant trifle. Here the actual damage was $265. The stipulated reparation is a few dimes. With all due deference to the great judicial tribunals which have countenanced and enforced this stipulation, and which we have been likewise constrained to enforce in interstate matters, we can not give our independent assent that such a limitation is reasonable. It is unreasonable, and it will not be applied in intrastate business where this court would have to assume the responsibility of giving countenance to it.

In Jones' Telegraph and Telephone Companies, 2d ed., § 377, where most of the pertinent decisions are included in a footnote, it is said:

"The validity of the stipulations in the blank form by which these companies have attempted to exonerate themselves for all losses caused by errors made in the transmission or delays in delivering messages, except the amount received for sending, unless the message is ordered to be repeated, has been variously viewed by the courts, some of which hold

them to be valid; yet the weight of authority is that they are void and unenforceable. The latter courts considered these stipulations as a mere device for avoiding liabilities for acts of their own negligence, or willful wrongs. As has been seen, they can not enforce any regulation or contract, by means of which they may relieve themselves for any losses caused by their own negligence or that of their servants. Any rule which seeks to relieve them from exercising their employment with diligence, skill and integrity contravenes public policy as well as the law; and whenever they attempt to avoid these duties, they do so at the expense of and injury to their patrons."

Turning to other phases of this case, it is urged that the plaintiff's damage was of such a remote and speculative character that the telegraph company should not be held liable therefor. It was shown to be a custom of the grain and milling trade that where no reply to an acceptance of an offer to sell is received, a confirmation of the bargain is understood. The addressee had offered to sell 10,000 bushels. The plaintiff's telegram was an acceptance. The telegram as transmitted was an acceptance for 6000 bushels, an amount the addressee could fill. If the telegram had been correctly transmitted it would have been an acceptance of the offer of 10,000 bushels, an amount the addressee could not supply; but by another custom of the trade the addressee would have immediately notified the sender of the telegram so that he could have protected himself by buying elsewhere. Since no notification was received from the addressee of his inability to fill the order for 10,000 bushels and that he could only fill it to the extent of 6000 bushels, the plaintiff's loss is the difference in the market price of the 4000 bushels which he had to procure elsewhere to supply his trade. This matter seems intricate and involved, no doubt, but its intricacy lies in the highly complex maneuvers of the grain and milling trade, not in the legal principles which govern liability for default. The law is simple enough, and once the weird necromancy and cabalistic symbols of the milling markets are understood the damages are seen to be certain, proximate, and a recovery seems proper. We see no analogy between this case and *King v. Telegraph Co.*, 81 Kan. 223, 105 Pac. 449, where the plaintiff could only show that if his telegram had been delivered he might have bought some wild horses and might later have sold them at a profit. There was never even the shadow of a legal

claim for damages in that case.   Here there was an offer to sell, an acceptance, an erroneous transmission of the acceptance, a consequent failure of customary modification of the offer when it could not be completely filled, and a resultant loss which the injured party would not have suffered if the telegram had been correctly transmitted, since on notification of inability to fill the order it could have readily been filled by purchase on the open market elsewhere.

Defendant cites many other decisions in telegraph cases, the gist of them being that damages can not be recovered for failure to properly transmit telegrams which merely deprive the sender or addressee of an opportunity to make a contract or to close a bargain and with the consequent prevention of possible profits which would have been realized *if* the telegram had been properly transmitted and *if* pursuant thereto the bargain had been closed and *if* it had turned out profitably according to the aggrieved party's expectations.   But none of these bear any close analogy to the present case.

It is urged that the message, being in code and unexplained, a recovery can not be had, following *Hadley v. Baxendale*, 9 Exch. 341, and the American authorities which follow the doctrine announced in that case.   But code messages in the milling and grain business are common and are known by the telegraph companies to be important.   In this case, the message was only partly in code and the manager of the telegraph company admitted that he knew it was a business message; and even to one unfamiliar with the grain dealer's code the message disclosed that something or other involved in the grain and milling business was *booked* on *Kansas City basis*.   That was all the defendant needed to know about it, to charge it with notice that a failure to transmit the message correctly would probably lead to serious consequences.   (*Telegraph Co. v. Collins*, 45 Kan. 88, 25 Pac. 187; *Cain v. Telegraph Co.*, 89 Kan. 797, 804, and citations, 133 Pac. 974; *American Union Telegraph Co. v. Daugherty*, 89 Ala. 191; *W. U. Tel. Co. v. Harris & Comstock*, 19 Ill. App. 347; *W. U. Tel. Co. v. Nagle & Winn*, 11 Tex. Civ. App. 539, 542; see, also, *Western Union Tel. Co. v. Tyler et al.*, 74 Ill. 168; 37 Cyc. 1753.)

The judgment is affirmed.