**SOUTHWESTERN BELL TELEPHONE COMPANY, INC., et al.,**
Appellants/Appellees,

v.

**J. Ross RUCKER et al.,**
Appellees/Appellants.

No. 6427.

Court of Civil Appeals of Texas,
El Paso.

May 12, 1976.

Rehearing Denied June 9, 1976.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., James M. O'Leary, Perry Davis, Jr., Odessa, Marlin L. Gilbert, James E. Barden, San Antonio, for appellants/appellees.

A. R. Archer, Jr., Monahans, Max E. Ramsey, Odessa, for appellees/appellants.

## OPINION

OSBORN, Justice.

This case presents an appeal by both parties in a suit originally filed by the owners of radio station KVKM in Monahans, Texas, against Southwestern Bell Telephone Company and its local manager, John Zittle, for damages. Based upon jury findings of negligence and gross negligence, a judgment was entered for the plaintiffs for $2,000.00 actual damages and $35,000.00 exemplary damages. In addition, the trial Court awarded the Telephone Company judgment against the station owners for $2,872.30 on a stipulated debt for services rendered. We reverse and render the judgment against the Telephone Company and affirm the judgment against the station owners.

The broadcast studio of KVKM is located on the north side of Monahans and the transmitter is six miles north of the studio. In addition to regular telephone service to the studio, the Telephone Company also provides remote control lines from the studio to the transmitter in order that the transmitter may be operated by personnel at the studio. It is possible to operate the transmitter without the remote control lines, but this requires personnel to be at the transmitter site. KVKM broadcasts certain high school athletic events, including football and baseball games, and these require telephone lines from the stadium where each game is played. In addition, Sunday morning church services are broadcast nine months each year from the First Baptist Church and three months each year from the First Methodist Church through the use of Telephone Company lines. Other special broadcasts also require the use of Telephone Company lines.

The owners of the station, being the plaintiffs, alleged that in March, April, and May, 1971, the defendant's employees disconnected the remote control lines at a terminal between the studio and transmitter causing a sudden excessive surge of voltage, resulting in the blowing of fuses, and interruption of broadcast service, and damage to the transmitter facilities. On August 17, 1971, the remote control lines were intentionally disconnected when plaintiffs failed to pay the defendant for past due charges, and this was alleged to have resulted in interruption of broadcast services and additional damage at the transmitter.

Plaintiffs also alleged an inability to broadcast several football and baseball games in 1970, 1971, and 1972 because the Telephone Company failed to provide proper connections for remote lines at the designated stadiums. Similar allegations were made concerning a broadcast to be made from a Jaycee carnival in 1973. The inability to make these broadcasts allegedly resulted in loss of sponsors and revenues and

materially damaged the credibility of the station in the local community resulting in a reduction in value of the station. In addition, in March, 1972, the lines to the First Baptist Church and the First Methodist Church were crossed and the service from each church was heard in the sanctuary of the other church, resulting in a disruption of religious services carried by the radio station.

By a partial summary judgment, the trial Court determined that certain Telephone Company Tariffs and the one-year statute of limitations provided for in the Communications Act of 1934, barred or limited recovery as to all conduct of the defendant except the disconnecting of remote control lines on August 17, 1971, although evidence of the other acts were admitted on the issues relating to malice and exemplary damages. With regard to the August incident, Mr. Zittle wrote to Ross Rucker, an owner and general manager of the station, on August 3, 1971, advising that unless a payment of $1,000.00 was received by August 16, 1971, telephone service would be suspended on Tuesday morning, August 17, 1971. On the afternoon of August 17th, Mr. Zittle called the station and was told by Mr. Rucker that no payment had been made. Mr. Zittle said he told Mr. Rucker that the lines would be cut off, and he had a work order issued to accomplish that purpose, knowing that the station could still broadcast with personnel at the transmitter. In the meantime, Mr. Rucker called Mr. Fyffe with the Telephone Company in Lubbock and said he received an assurance that the lines would not be disconnected. Mr. Fyffe denied this in his testimony and said he told Mr. Rucker that he would not countermand Mr. Zittle's determination to disconnect the lines. When a serviceman disconnected the lines at 5:00 o'clock P.M., the station went off the air. Since that was not intended by Mr. Zittle, he went to the transmitter, met the service employee, and had the lines reconnected. Thereafter the station experienced considerable difficulty and an independent engineer concluded that the lines had been reversed when they were reconnected. After a change in connections, the difficulties were alleviated as to the transmitter operations.

Much of the testimony was in dispute and the Telephone Company offered evidence to show that some of the broadcast problems related to poor maintenance at the station, some problems related to remote lines furnished by General Telephone Company and other companies unrelated to Southwestern Bell Telephone Company, and some of the problems were related to errors on the part of the remote broadcasters at the various athletic events. The record consists of over 270 pages of transcript, five volumes of testimony, and five volumes of exhibits. The jury found that on August 17, 1971, Mr. Zittle was an agent of the Telephone Company, acting in a managerial capacity, and he was in the scope of his employment when he ordered the remote control lines disconnected. They failed to find that the Telephone Company authorized or ratified his acts in having the lines disconnected, and also failed to find that plaintiffs contended that there were overcharges made by the Telephone Company on these lines. The jury found the Telephone Company and its manager did not act with malice, and that the lines were disconnected because of plaintiffs' failure to pay its bill. They found that the manner in which the Company caused the lines to be reconnected was negligence, such negligence was a proximate cause of plaintiffs' damages, and that such negligence amounted to gross negligence, and damages as provided for in the judgment against the Telephone Company. The Telephone Company and its manager present 11 points of error in their appeal which we shall consider first, and then we shall consider the 16 points of error in the appeal by the owners of the station.

The first point urges that the trial Court erred in entering judgment in an amount in excess of that allowed under the applicable tariff. The General Private Line Services and Channels Tariff in effect at the time provides:

"The liability of the Telephone Company for damages arising out of mistakes, omissions, interruptions, delays, or errors

or defects in transmission occurring in the course of furnishing service, channels or other facilities and not caused by the negligence of the customer, or of the Telephone Company in failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision, shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, or error or defect in transmission occurs."

■ "There can be no question as to the right of a telephone company doing a general public business to establish reasonable rules and regulations for furnishing service to patrons and for the conduct of its business. Ordinarily regulations so made will be presumed to be reasonable and necessary, unless the contrary is shown." *Kelly v. Southwestern Bell Telephone Co.*, 248 S.W. 658 (Tex.Comm.App., 1923, judgmt. adopted). The Tariff is binding on a subscriber to a company's telephone service and its effect is not dependent on the subscriber's actual knowledge of the Tariff. *Alcazar v. Southwestern Bell Telephone Company*, 353 S.W.2d 933 (Tex.Civ.App., Austin 1962, no writ). Tariffs are even recognized as having the force and effect of law. *Carter v. American Telephone & Telegraph Company*, 365 F.2d 486 (5th Cir. 1966), cert. denied, 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967).

Appellants rely upon several cases limiting liability under a contract or tariff where there was a failure to print a listing in the yellow pages of a telephone book. *Russell v. Southwestern Bell Telephone Company*, 130 F.Supp. 130 (E.D.Tex.1955); *Wade v. Southwestern Bell Telephone Company*, 352 S.W.2d 460 (Tex.Civ.App., Austin 1961, no writ). They also cite cases holding that provisions of a tariff apply in a case of trespass and in a suit for damages for failure to provide uninterrupted private line service. See *Alcazar v. Southwestern Bell Telephone Company*, supra; and *American Telephone and Telegraph Company v. Flori-*

*da-Texas Freight, Inc.*, 357 F.Supp. 977 (S.D.Fla.1973).

■ The station owners urge that, where negligence is the basis of the cause of action, recovery may be had for damages sustained under the holding in *Mountain States Tel. & Tel. Co. v. Hinchcliffe*, 204 F.2d 381 (10th Cir. 1953). As noted in *American Telephone and Telegraph Company v. Florida-Texas Freight, Inc.*, supra, the Hinchcliffe decision is inapplicable where a tariff is in effect.

Practically the same identical tariff as relied upon by the Telephone Company in this case was considered by the Court in *Southern Bell Telephone & Telegraph Company v. Invenchek, Inc.*, 130 Ga.App. 798, 204 S.E.2d 457 (1974). In that case, the Court said:

"The question raised in this case is this: Where a telephone subscriber claims damages due to negligence on the part of the company in curtailing service, may the company defend based on the Commission General Subscriber Services Tariff § A2.4.4: 'The liability of the Telephone Company for damages arising out of mistake, omissions, interruptions, delays, errors or defects in transmission, or failures or defects in facilities furnished by the Telephone Company, occurring in the course of furnishing service or other facilities and not caused by the negligence of the customer, or of the Telephone Company in failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistakes, omissions, interruptions, delay or error or defect in transmission, or failure or defect in facilities occurs.' * * * "

The Court concluded:

" * * * Counts 1 and 2 of the petition, based on negligence, are subject to the defense pleaded under the above quoted tariff, * * *."

The only exception to the rule seems to be where the conduct of the utility company

has been willful and wanton or the result of gross negligence. *Southern Bell Telephone & Telegraph Company v. Invenchek,* supra; *Holman v. Southwestern Bell Telephone Company,* 358 F.Supp. 727 (D.Kan.1973); *Weld v. Postal Telegraph Cable Co.,* 199 N.Y. 88, 92 N.E. 415 (1910).

We sustain the first point of error insofar as actual damages were awarded against the Telephone Company based upon the jury finding of negligence. The Tariff limits liability to an amount equivalent to the proportionate charge to the customer for the period of service involved in the interruption. The Tariff does not limit liability as to Company employees, and as to the Appellant-Zittle the first point is overruled.

■ It is contended in Point of Error IIA that there is no evidence to support the jury finding that the manner in which the Telephone Company and Zittle caused the remote control lines to be reconnected was negligence. In view of our having sustained Point of Error I as to the Telephone Company, this issue is relevant only as to the conduct of Mr. Zittle. We review the evidence under the standard no evidence test, considering only the evidence and inferences tending to support the finding and disregarding all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

■ The evidence reflects that on the afternoon of August 17, 1971, Mr. Zittle was listening to KVKM on the radio at his office when Mr. Knott disconnected the remote control lines and the station went off the air. He immediately had Mr. Justice, the wire chief, contact Mr. Knott on his radio and ask him to return to the transmitter. Mr. Zittle and Mr. Justice drove to the transmitter. While they were there, along with Mr. Rucker, Mr. Knott reconnected the lines on a Telephone Company pole and at the transmitter building. Mr. Zittle did not assist in the reconnection and apparently gave no instructions other than to have the lines reconnected. Although the evidence from Mr. Davenport, an independent engineer, would support a finding that the lines were reversed when they were reconnected,

such act was the act of Mr. Knott, and not Mr. Zittle, and Mr. Knott was an employee of the Telephone Company and not Mr. Zittle. There being no evidence of negligence on the part of Mr. Zittle when the remote lines were reconnected, we sustain Point of Error IIA as to the Appellant, John Zittle. The above holding makes Points of Error IIB, IIC, IIIA, IIIB, and IIIC immaterial and we need not pass on them.

■ Points of Error IVA, IVB and IVC attack the finding of gross negligence on the grounds of no evidence, insufficient evidence, and as being against the great weight of the evidence. Although Tariffs generally limit the Telephone Company's liability for ordinary negligence, as noted above, they do not generally limit liability for gross negligence. Having concluded that Mr. Zittle was not negligent, we also conclude for the same reason that there is no evidence of any gross negligence on his part. As to the Telephone Company, the evidence is clear, and the jury found that the remote lines were disconnected because the station owners had failed to pay their telephone bill which was several months delinquent. Mr. Zittle knew that if the lines were disconnected the station could still broadcast by having personnel at the transmitter. When the broadcast stopped shortly before 5:00 o'clock P.M. on August 17, 1971, Mr. Zittle had Mr. Justice contact the service employee, Mr. Knott, with instructions to reconnect the lines and the two of them went to the transmitter to see that they were reconnected. Mr. Knott did in fact reconnect the lines but, according to the consulting engineer, they were crossed or reversed when the reconnection was made. While the record is replete with instances when the station could not broadcast because of problems with Telephone Company lines, or interference with lines between the station and the transmitter, we find no evidence that the error in reconnecting the remote control lines at the transmitter resulted from an entire want of care which would raise the belief that the acts or omissions were the result of a con-

scious indifference to the rights or welfare of the persons to be affected by them. This has long been the requirement in gross negligence cases. *Missouri Pac. Ry. Co. v. Shuford,* 72 Tex. 165, 10 S.W. 408 (1888).

Even where an order was given or an affirmative act performed, which brought about the injury which resulted from a particular incident, Courts have held that there was no gross negligence. *Bennett v. Howard,* 141 Tex. 101, 170 S.W.2d 709 (1943); *LeJeune v. Gulf States Utilities Company,* 410 S.W.2d 44 (Tex.Civ.App., Beaumont 1966, writ ref'd n. r. e.). Even unlawful conduct which was in violation of a city ordinance did not meet the requirement. *Loyd Electric Company v. DeHoyos,* 409 S.W.2d 893 (Tex.Civ.App., San Antonio 1966, writ ref'd).

Further, there is no evidence that the act of reconnecting the remote control lines, even if done in a manner constituting gross negligence, was an act of the corporation rather than an employee. All of the work was performed by Kenneth Knott, an installer-repairman. There is no evidence that he was a "vice-principal" for whose conduct exemplary damages could be awarded against the corporation, under the rule stated in *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934). The no evidence point is sustained.

We would also sustain the insufficient evidence point in the event we be in error as to the no evidence point. When the entire record is considered, there is much evidence that some of the broadcast problems arose not from acts or omissions of the Telephone Company but from acts or omissions of the station broadcast personnel. Considering all the evidence, it appears that both the Telephone Company and the station personnel made some mistakes, and perhaps both were on occasion guilty of negligent conduct which affected the broadcast facilities, but none of the conduct appears to have resulted from a conscious indifference to the rights of others affected thereby.

Having concluded that the Telephone Company's liability is limited as provided for in the Tariff, and that there is no liability upon the part of John Zittle, the other points of error raised by these parties as Appellants become immaterial and need not be determined.

█ The station owners, by their first point of error, contend that the trial Court erred in granting the Telephone Company's motion for partial summary judgment. By the fifteenth point of error, it is contended that the trial Court erred in failing to grant a motion to modify and amend the final judgment and sever those causes of action decided by the partial summary judgment. In granting the partial summary judgment, the trial Court ruled that the causes of action for loss or interruption of various football broadcasts in 1970 and a baseball broadcast in May, 1972, were barred by the one-year statute of limitations set forth in Section 415(b) of the Communications Act of 1934. 47 U.S.C.A. 415. The Court also ruled that causes of action for damages in connection with the football broadcasts in September and October, 1971, the church broadcast in March, 1972, the football broadcast in 1972, a baseball broadcast in April, 1973, and the Jaycee carnival broadcast in July, 1973, were all limited by the provisions of Tariff No. 260. A similar ruling was made under the General Private Lines Services and Channels Tariff with regard to claims concerning loss of services resulting from the disconnection of remote control lines in March, April, and May, 1971. The Court denied the motion as to Zittle.

In *Ward v. Northern Ohio Telephone Company,* 251 F.Supp. 606 (N.D.Ohio 1966), the Court, in a summary judgment case, concluded that the Federal rather than the State limitation statute applied in a claim arising from an alleged refusal or failure to give telephone and wire service to the plaintiff. This holding was made as to all claims filed in Court and not based on overcharges. The summary judgment was affirmed on appeal. *Ward v. Northern Ohio Telephone Company,* 381 F.2d 16 (6th Cir. 1967). The Federal rather than the State statute of limitations was also applied in *Hofler v. American Telephone and Tele-*

*graph Company,* 328 F.Supp. 893 (E.D.Va. 1971), and in *Swarthout v. Michigan Bell Telephone Company,* 504 F.2d 748 (6th Cir. 1974).

With regard to the application of tariffs, the same basic issue is again presented as was raised by the Telephone Company in its first point of error. Following the holding in the Invenchek case, we conclude that the tariffs do apply to negligence as well as to contract cases. In *American Telephone and Telegraph Company v. Florida-Texas Freight, Inc.,* supra, where reliance was placed upon the Hinchcliffe case, as it is here by the station owners, the Court held that "the rights and liabilities of the parties in this lawsuit are governed *exclusively* by Tariff No. 260." (Emphasis added). Having concluded that the trial Court correctly decided the motion for partial summary judgment, the two points of error are overruled.

■ The next two points complain about a failure to submit certain requested special issues. The issues inquired whether the Telephone Company's conduct from 1970 through 1973 was actuated by malice, was gross negligence, and whether the station owners were entitled to exemplary damages. As noted above, at least some of the conduct during the years inquired about was barred by limitations and, therefore, the issues as requested were not in substantially correct wording and should not have been submitted. Rule 279, Tex.R.Civ.P.; *Ybanez v. Anchor Constructors, Inc.,* 489 S.W.2d 730 (Tex.Civ.App., Corpus Christi 1972, writ ref'd n. r. e.). Points of error two and three are overruled.

■ The next three points complain about the submission of Special Issue No. 6 which inquired as to whether the station owners contended there were overcharges on the remote lines when they were disconnected on August 17, 1971, and the Court's instruction as to the right to disconnect for non-payment of sums due the Telephone Company, and also as to a failure to submit a requested issue which inquired as to a contention by the owners of overcharges on all lines and not just remote control lines.

The trial Court having properly granted the motion for summary judgment, the issues as submitted properly limited the case on the issue the trial Court submitted to the jury. Under our determination of other issues as to liability between the parties, the issue raised by these points must necessarily be harmless error. Rule 434, Tex.R. Civ.P. Points of error four, five, and six are overruled.

■ The next point complains of a failure to submit requested special issues which inquired about Mr. Fyffe making false representations that the remote controlled lines would not be disconnected and whether the station owners relied upon such representation. The requested issues did not inquire whether the false representation was made for the purpose of being acted upon by the defrauded party although this was an essential element of the cause of action. *Brady v. Johnson,* 512 S.W.2d 359 (Tex.Civ.App., Austin 1974, no writ); *Radio. KBUY, Inc. v. Lieurance,* 390 S.W.2d 16 (Tex.Civ.App., Amarillo 1965, no writ). Point of error number seven is overruled.

■ The following point complains about a failure to submit a series of requested issues inquiring about a failure of the Telephone Company to ascertain if the station transmitter was being operated manually prior to disconnecting the remote control lines and whether such failure was actuated by malice and whether the failure constituted gross negligence. The jury found that the remote control lines were disconnected because of a failure to pay the sum due for such lines. The Tariff provided such a right. Having such a right, and having acted under the Tariff, there was no duty to inquire as to manual operation of the transmitter. As noted earlier, the parties' rights were governed exclusively by the Tariff. *American Telephone and Telegraph Company v. Florida-Texas Freight, Inc.,* supra. Point of error number eight is overruled.

■ The next two points urge the trial Court erred in instructing the jury, concerning the provisions of the General

Private Line Services and Channels Tariff, that service could be disconnected for non-payment of any sum due the Telephone Company. Rule 277, Tex.R.Civ.P., requires the Court to submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict. Where there exists some doubt or question as to a party's right or duty, an instruction is proper. *City of Beaumont v. Henderson,* 349 S.W.2d 301 (Tex.Civ.App., Beaumont 1961, no writ). By removing the objection that such instructions render the charge a general charge, the Supreme Court obviously intended to broaden the authority of the trial Court to give instructions. When exemplary damages were sought, the trial Court properly instructed as to the right under which the Company acted in disconnecting the remote control lines. 17 Tex. Jur.2d, Damages, § 179. In any event, we find no reversible error. Points of error nine and ten are overruled.

█ Point of error number eleven contends the trial Court erred in assuming in an instruction to the jury that the station owners owed the Telephone Company for services with regard to the remote control lines. Mr. Zittle testified that in August, 1971, the balance for one remote control line was $161.21, and for the other line the balance was $246.82. Mr. Rucker admitted that he did not have the money to pay the bill and no payment was made after the letter from Mr. Zittle on August 3, 1971. The instruction did not assume the amount owed, but only that charges were owed on the remote control lines. Under the undisputed evidence the instruction was proper. Point of error number eleven is overruled.

█ The station owners next contend that the trial Court erred in the submission of Special Issue No. 11 which inquired whether the remote control lines were disconnected because of the failure to pay sums due for such lines. The Tariff gave such a right and the jury found that the right was exercised. There was no necessity to first determine if there was some amount due, because it was undisputed that the station was delinquent on its account and payment was not made prior to August 17, 1971. No suggestion was made of any prejudice resulting from the issue and any error would be harmless Rule 434, Tex.R. Civ.P. Points of error twelve and thirteen are overruled.

█ The next point urges error in the trial Court in failing to inquire whether or not the Telephone Company complied with the notice in writing as required by the Tariff before disconnecting the lines. The undisputed proof established that written notice was sent on August 3, 1971, and received by Mr. Rucker a day or two later. We believe the notice which referred to "telephone service" must necessarily have included "remote control lines" which were a part of the service provided by the Telephone Company. Point of error number fourteen is overruled.

█ The last point complains of the trial Court's order which prohibited the radio station from commenting on the trial during its progress. The owners do not suggest any harm from such order and we find none. Rule 434, Tex.R.Civ.P. Point of error number sixteen is overruled.

The judgment of the trial Court in favor of Southwestern Bell Telephone Company for $2,872.30 is affirmed, and the judgment against Southwestern Bell Telephone Company and John Zittle for $37,000.00 is reversed and judgment rendered denying the station owners any recovery against Southwestern Bell Telephone Company or John Zittle. Although the station owners were entitled under the Tariffs and the partial summary judgment to recover an amount equivalent to the proportionate charge for the period of service involved, there was no proof nor issues requested and these damages were waived.