No. 82,266

DANISCO INGREDIENTS USA, INC., *Appellee*, v. KANSAS CITY POWER & LIGHT COMPANY, *Appellant*.

(986 P.2d 377)

Opinion filed July 9, 1999.

*Robert Gingrich*, of Kansas City, Missouri, argued the cause, and *Michael A. Rump*, of Kansas City, Missouri, was with him on the briefs for appellant.

*C. Edward Peterson*, of Finnegan, Conrad & Peterson, L.C., of Kansas City, Missouri, argued the cause, and *Jeremiah D. Finnegan*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The Western District of the Missouri Court of Appeals seeks clarification of Kansas law regarding liability limitations contained in tariffs adopted by Kansas City Power & Light (KCP&L) and approved by the Kansas Corporation Commission (KCC). The tariffs purport to relieve KCP&L from liability for both simple negligence and wanton misconduct. The questions certified under the Kansas Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*, concern both the reasonableness and enforcement of these tariffs.

## Certified Questions

"(1) Was it unreasonable for the Kansas Corporation Commission to allow KCP&L's Rules 7.06 and 7.12 to become effective insofar as these Rules relieve KCP&L of liability for damages of any nature resulting from the utility's own (a) simple negligence, or (b) willful or wanton misconduct, or gross negligence, in regard to the supply of electric service?

"(2) If you find in answer to (1) above that it is reasonable for the Kansas Corporation Commission to allow a tariff to become effective which relieves KCP&L from liability for its own simple negligence, but that it is not reasonable to allow a tariff to become effective to the extent that it relieves KCP&L from liability for its willful or wanton misconduct or gross negligence, should we strike down or refuse to enforce the entire tariff, or only so much of it as purports to limit liability for gross negligence or willful or wanton misconduct, and enforce it as to simple negligence?"

## Answer to certified questions

It was reasonable for the KCC to allow KCP&L's Rules 7.06 and 7.12 to become effective insofar as these rules relieve KCP&L of liability for damages of any nature resulting from the utility's own simple negligence. However, it was unreasonable for the KCC to allow the same rules to relieve KCP&L of liability for damages of any nature resulting from the utility's willful or wanton misconduct. The Western District of the Missouri Court of Appeals should enforce the limitations of liability contained in Rules 7.06 and 7.12 as to simple negligence only.

## Factual Background

The following factual statement was set out by the Missouri Court of Appeals pursuant to K.S.A. 60-3203:

"KCP&L is an electric public utility doing business in Missouri and Kansas. Danisco manufactures food additives at a production facility located in the New Century Airport, near Gardner, Kansas, and Danisco is one of KCP&L's Kansas electric customers. Danisco's production facility uses a high vacuum process which cannot tolerate even the briefest interruption of power. Danisco sued KCP&L to recover its economic damages related to three power outages which occurred in 1993.

"The first power outage occurred on September 2, 1993. An underground power cable failure caused a substation circuit breaker to instantly open and close, causing a 'momentary' interruption. [A 'momentary' interruption is an interruption which lasts less than 1 second.] KCP&L claims the reason for the underground cable failure is unknown.

"The second power interruption occurred on September 27, 1993. This outage was preceded by a low-voltage report from Danisco. In an effort to increase the voltage on the circuit serving Danisco's facility, KCP&L linemen undertook switching procedures to reconfigure the circuit providing service to Danisco. During these procedures, a line switch failed in one location, and at or near the same time power monitoring equipment failed in another location. The two equipment failures resulted in an interruption in the supply of power to Danisco which lasted approximately 5 hours. As a result of this outage, Danisco was not able to operate its production facility for up to 80 hours.

"The third interruption occurred on November 24, 1993. On that day, KCP&L claims a substation circuit breaker opened and closed for some unknown reason. Substation circuit breakers will open and close due to storms, lightning, varmints on the wires, or when electrical devices or equipment somewhere on the circuit fail.

"As a result of these interruptions of power, Danisco claims damages based on 'lost opportunity' to produce food additives for the period during the power outages, as well as the time period it took to restore Danisco's production line back to full operation after a power interruption. In Count I of its Petition, Danisco claims that these damages were caused by KCP&L's negligence. In Count II of its Petition, Danisco claims that KCP&L knew that Danisco would suffer unavoidable damages if it lost power, but willfully failed to inform it of the danger of a power outage or to protect it from such an outage. Although Danisco claims lost profits in the amount of $253,271.75, a contingent settlement has apparently been reached below, with the result that, if the courts uphold the determination below that KCP&L's limitation on liability is unenforceable, then KCP&L will pay the sum of $100,000.00 in damages to Danisco.

"KCP&L argues that at all times relevant in this case, it had on file as part of its tariff 'General Rules and Regulations Applying to Electric Service' which had been allowed to become effective by the KCC under the power and authority the Kansas legislature gave the KCC to approve just and reasonable rates. KCP&L argues that, once allowed to become effective, these tariffs, including KCP&L's General Rules 7.06 and 7.12, are entitled to be given the force and effect of law and that these rules limit KCP&L's liability for power service interruptions.

"Rule 7.06 determines KCP&L's duty to supply continuous electrical energy to customers. It provides that:

'The Company will use reasonable diligence to supply continuous electric service to the customer but does not guarantee the supply of electric service against irregularities or interruptions. The Company shall not be considered in default of its service agreement with the customer and shall not otherwise be liable for any damages occasioned by any irregularity or interruption of electric service.'

"Rule 7.12 determines KCP&L's liability to its customers generally. It provides that:

'The Company shall not be considered in default of its service agreement and shall not be liable on account of any failure by the Company to perform any obligation if prevented from fulfilling such obligation by reason of any delivery delay, breakdown, or failure of or damage to facilities, an electric disturbance originating on or transmitted through electric systems with which the Company's system is interconnected, act of God or public enemy, strike or other labor disturbance involving the Company or the Customer, civil, military, or governmental authority, or any cause beyond the control of the Company.'

"The trial court held that these limitations of liability were unreasonable and, so, unenforceable and invalid, citing to this Court's decision in *Forte Hotels, Inc. v. Kansas City Power & Light Company*, 913 S.W.2d 803 (Mo. App. 1995). In that case, this Court did hold these rules unreasonable in reliance on two Kansas Supreme Court cases, *Shawnee Milling Co. v. Postal Telegraph Cable Co.*, 101 Kan. 307, 166 P[ac.] 493 (1917), and *McNally Pittsburg Mfg. Corp. v. Western Union Tel. Co.*, 186 Kan. 709, 353 P.2d 199, 204 (1960). On appeal, KCP&L claims that these issues were not properly decided in *Forte Hotels*, that under Kansas law the trial court should have given the force and effect of law to KCP&L's Rules limiting its liability herein, and that the trial court erred in substituting its judgment for that of the KCC by refusing to find KCP&L's continuity and liability rules reasonable and enforceable under the facts of this case."

The Missouri Court of Appeals stated with regard to the questions certified:

"[T]his Court concludes that, under prior Kansas decisions, we have the authority to determine whether KCP&L's Rules are unreasonable and therefore unenforceable, despite the fact that they have been allowed to become effective by the

KCC. This Court also concludes that these Rules are unreasonable, under prior Kansas decisions, to the extent they purport to relieve KCP&L from damages resulting from the company's willful and wanton misconduct or what is sometimes referred to as 'gross negligence.' This Court is unable to determine, however, whether the Kansas Supreme Court (1) would find these tariffs reasonable to the extent that they relieve KCP&L from damages resulting from simple negligence, and, if so, (2) whether it would enforce them as to claims of simple negligence, or would invalidate them entirely because of their overbreadth in purporting to also relieve KCP&L of its liability for willful or wanton misconduct."

## Scope of Review

KCP&L contends that our scope of review as to the reasonableness of limitations contained in tariff Rules 7.06 and 7.12 is governed by the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Specifically, KCP&L argues that our scope of review is governed by K.S.A. 77-621(c)(8), which provides that the court may reverse an agency decision if it determines "the agency action is otherwise unreasonable, arbitrary or capricious." Thus, according to KCP&L's argument, the question on appeal is whether the KCC's approval of the liability limitations in Rules 7.06 and 7.12 was unreasonable, arbitrary, or capricious.

Danisco contends that the KJRA is inapplicable in this appeal. Specifically, Danisco argues that this is not an appeal from an order or decision of the KCC. Rather, according to Danisco, the issues raised by the certified questions call for a legal determination of whether KCP&L's tariff provisions limiting liability are lawful and reasonable.

This is not an action for judicial review of the KCC's order approving the instant tariffs. The action is not one of judicial review of a state agency order; the provisions of the KJRA do not apply. Instead, this case involves certified questions of law submitted by the Western District of the Missouri Court of Appeals. Our jurisdiction is based upon K.S.A. 60-3201, the power to answer, under certain conditions, "questions of law of this state which may be determinative of the cause then pending in the certifying court."

The questions presented for resolution require us to determine whether the tariffs as adopted and approved are lawful. Specifi-

cally, the question we must resolve is whether the liability limitations contained in the questioned tariffs are reasonable and enforceable as a matter of law and public policy. This is a far different question than whether the KCC's order approving the tariffs was unreasonable, arbitrary, or capricious. In resolving this legal question, this court's review is unlimited. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

Discussion and Analysis

The certified questions assume that KCP&L has the authority to adopt tariffs which impose reasonable limits on its liability to its customers for interruptions of service. In their briefs and arguments before this court, the parties agree that under Kansas law such authority exists. The certified questions also assume that the court has the authority to determine whether such tariff restrictions are reasonable even though the tariffs have been approved by the KCC. Again, the parties in their briefs and arguments before this court agree that such authority exists. Nevertheless, an examination of the controlling statutes and case law supporting such assumptions is appropriate.

Tariffs are those terms and conditions which govern the relationship between a utility and its customers. *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375, 377, 664 P.2d 798 (1983). Tariffs may be, and usually are, the handiwork of the regulated utility but when duly filed with the KCC they generally bind both the utility and the customer. 233 Kan. at 377.

The Electric Public Utilities Act, K.S.A. 66-101 *et seq.* gives the KCC "full power, authority and jurisdiction to supervise and control the electric public utilities, as defined in K.S.A. 66-101a, doing business in Kansas," and empowers the KCC to "do all things necessary and convenient for the exercise of such power, authority and jurisdiction." K.S.A. 66-101. K.S.A. 1998 Supp. 66-101b states:

"Every electric public utility governed by this act shall be required to furnish reasonably efficient and sufficient service and facilities for the use of any and all products or services rendered, furnished, supplied or produced by such electric public utility, to establish just and reasonable rates, charges and exactions and to make just and reasonable rules, classifications and regulations. Every unjust or

unreasonably discriminatory or unduly preferential rule, regulation, classification, rate, charge or exaction is prohibited and is unlawful and void. The commission shall have the power, after notice and hearing in accordance with the provisions of the Kansas administrative procedure act, to require all electric public utilities governed by this act to establish and maintain just and reasonable rates when the same are reasonably necessary in order to maintain reasonably sufficient and efficient service from such electric public utilities."

K.S.A. 1998 Supp. 66-101c requires every public utility doing business in Kansas over which the KCC has control to publish and file with the KCC copies of all schedules and rates as well as copies of all rules, regulations, and contracts. The KCC has the power to investigate all schedules of rates, rules, and regulations. K.S.A. 1998 Supp. 66-101d. If the KCC determines that such rates, rules, or regulations are unjust, unreasonable, unfair, unjustly discriminatory, or unduly preferential or in any way in violation of the provisions of the Electric Public Utilities Act, the KCC has the power to substitute such rates, rules, or regulations as the KCC determines to be just, reasonable, and necessary. K.S.A. 1998 Supp. 66-101f.

The provisions of the Electric Public Utilities Act and all grants of power, authority, and jurisdiction made to the KCC are to be liberally construed, and all incidental powers necessary to carry into effect the provisions of the Act are expressly granted and conferred upon the KCC. K.S.A. 66-101g. All orders, regulations, practices, services, rates, fares, charges, classifications, tolls, and joint rates fixed by the KCC are prima facie reasonable unless, or until, changed or modified either by the KCC or in pursuance of proceedings initiated in court. K.S.A. 66-115.

In *Milling Co. v. Postal Telegraph Co.*, 101 Kan. 307, 166 Pac. 493 (1917), this court was faced with the question of whether a telegraph company could limit its liability for negligence. We noted that the statutes governing public utilities did not explicitly authorize utilities to limit their common-law liability, unlike a federal act applying to interstate telegraphs. However, we stated that certain language in the public utilities act did seem to recognize a narrow right to a limitation on liability such as the requirement that rules and regulations be reasonable and that rates be filed with the commission. We said:

"Of course, the public utilities commission has nothing directly to do with the legal liabilities of telegraph corporations on questions of damages, but so far as their liabilities enter into the cost of conducting their business, those liabilities are a proper element of consideration in rate making. The telegraph rates are based, in part, upon the legal consequences which attach to the service. If a higher degree of responsibility attaches to the service, a greater rate must be exacted. It has been held in this state that a common carrier (without a permissive statute) can not impose a condition exempting him from liability for his own negligence, and a telegraph company is so much like a carrier that its liability for negligence should be governed by similar principles, yet reasonable limitations of liability other than those which do not seek to excuse its gross negligence have been upheld [citation omitted]; while stipulations restricting liability to an insignificant sum where the negligence was gross have been disregarded. [Citation omitted.]" 101 Kan. at 310-11.

This court concluded that where there are no positive or permissive statutes governing the subject, a telegraph company may make reasonable stipulations limiting its liability, but the reasonableness of any such stipulation is a question for judicial determination. 101 Kan. 307, Syl. ¶ 2. The limitation in *Milling Co.* was held to be unreasonable in that it sought to limit liability for negligence to an insignificant sum in all circumstances. 101 Kan. at 311.

*Milling Co.* was later cited in *McNally Pittsburg Mfg. Corp. v. Western Union Telegraph Co.*, 186 Kan. 709, 353 P.2d 199 (1960). This court was again called upon to address provisions within a tariff filed by Western Union Telegraph Company limiting its liability to its customers under specified conditions. The tariff limitation had been approved by the KCC. The court in *McNally Pittsburg* stated that the KCC approval of a tariff limitation of liability did not necessarily give the limitation the force of law. 186 Kan. at 716. The court held that reasonable limitations of liability provided for in a tariff are authorized in Kansas as an integral part of the rate-making process. 186 Kan. at 713-15. The courts are the final arbiter of the reasonableness of a limitation of liability within a duly approved tariff. See *McNally Pittsburg*, 186 Kan. at 715; *Milling Co.*, 101 Kan. at 310-11.

Thus, we may conclude from the Electric Public Utilities Act and our prior cases that the Act does not explicitly confer upon the

public utility or the KCC the power to make tariffs which limit the liability of a public utility to its customers. See *McNally Pittsburg*, 186 Kan. at 714-15; *Milling Co.*, 101 Kan. at 310. However, Kansas allows reasonable limitations on such liability as an integral part of the rate making process. The responsibility for insuring reasonable rates and thus passing upon the propriety of liability limitations within approved tariffs lies with the KCC. However, the ultimate determination of whether a duly filed and approved tariff limiting a public utilities' liability to its customers is reasonable is a question for the courts to decide. See *McNally Pittsburg*, 186 Kan. at 715; *Milling Co.* 101 Kan. 307, Syl. ¶ 2.

Certified Question (1)

*Was it unreasonable for the Kansas Corporation Commission to allow KCP&L's Rules 7.06 and 7.12 to become effective insofar as these Rules relieve KCP&L of liability for damages of any nature resulting from the utility's own (a) simple negligence, or (b) willful or wanton misconduct, or gross negligence, in regard to the supply of electric service?*

The limitations of liability in this case are provided by two rules in KCP&L's tariff. Rule 7.06 determines KCP&L's duty to supply continuous electrical energy to customers and provides:

"The Company will use reasonable diligence to supply continuous electric service to the customer but does not guarantee the supply of electric service against irregularities or interruptions. The Company shall not be considered in default of its service agreement with the customer and shall not otherwise be liable for any damages occasioned by any irregularity or interruption of electric service."

Rule 7.12 determines KCP&L's liability to its customers generally. It provides:

"The Company shall not be considered in default of its service agreement and shall not be liable on account of any failure by the Company to perform any obligation if prevented from fulfilling such obligation by reason of any delivery delay, breakdown, or failure of or damage to facilities, an electric disturbance originating on or transmitted through electric systems with which the Company's system is interconnected, act of God or public enemy, strike or other labor disturbance involving the Company or the Customer, civil, military, or governmental authority, or any cause beyond the control of the Company."

Thus, Rule 7.06 completely insulates KCP&L from liability for interruptions in electrical service, whatever the cause. Rule 7.12 completely insulates KCP&L from any failure to perform any obligation caused by a host of circumstances.

Generally, other jurisdictions have held that rules promulgated by public utilities which absolve them from liability for simple negligence in the delivery of their services are reasonable and will be upheld. See *Pilot Industries v. Southern Bell Tel. & Tel. Co.*, 495 F. Supp. 356, 361-62 (D. S. C. 1979); *Olson v. Mountain States Tel. & Tel. Co.*, 119 Ariz. 321, 323, 580 P.2d 782 (Ct. App. 1978); *Professional Answering Serv. v. Chesapeake Tel.*, 565 A.2d 55, 63-65 (D.C. 1989); *Landrum v. Florida Power & Light Co.*, 505 So. 2d 552, 554 (Fla. Dist. App. 1987); *Sou. Bell Tel. Co. v. Invenchek*, 130 Ga. App. 798, 800, 204 S.E.2d 457 (1974); *In re Ill. Bell Switching*, 161 Ill. 2d 233, 244, 641 N.E.2d 440 (1994); *Computer Tool & Engineering v. NSP*, 453 N.W.2d 569, 573 (Minn. App. 1990); *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596, 601-02 (Mo. 1968); *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 108-09, 825 P.2d 588 (1992); *Lee v. Consolidated Edison*, 98 Misc. 2d 304, 306, 413 N.Y.S.2d 826 (1978); *Garrison v. Pacific NW Bell*, 45 Or. App. 523, 531-32, 608 P.2d 1206 (1980); *Behrend v. Bell Tele. Co.*, 242 Pa. Super 47, 74-75, 363 A.2d 1152 (1976), vacated 473 Pa. 320 (1977), reinstated 257 Pa. Super. 35 (1978); *Southwestern Bell Telephone Co. v. Rucker*, 537 S.W.2d 326, 331-32 (Tex. Civ. App. 1976). The theory underlying the enforcement of liability limitations is that because a public utility is strictly regulated its liability should be defined and limited so that it may be able to provide service at reasonable rates. *Bulbman, Inc. v. Nevada Bell*, 108 Nev. at 109. See *Waters v. Pacific Telephone Co.*, 12 Cal. 3d 1, 7, 114 Cal. Rptr. 753, 523 P.2d 1161 (1974) (stating that " '[r]easonable rates are in part dependent upon such a rule [limiting liability]' "). As the court in *Landrum v. Florida Power & Light Co.* stated: " '[a] broadened liability exposure must inevitably raise the cost and thereby the rates, of electric service.' " 505 So. 2d at 554.

The same cannot be said, however, where the promulgated rules purport to limit liability beyond that caused by ordinary negligence.

It is true that a few jurisdictions have allowed public utilities to enact rules which limit their liability for even gross negligence. See *Professional Answering Serv. v. Chesapeake Tel.*, 565 A.2d at 63-65; *In re Ill. Bell Switching*, 161 Ill. 2d at 244. However, the majority of jurisdictions have held limitations on liability to be unenforceable with regard to claims of gross negligence or willful and wanton conduct. See *Sou. Bell Tel. Co. v. Invenchek*, 130 Ga. App. at 800-01; *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d at 602-03; *Bulbman Inc. v. Nevada Bell*, 108 Nev. at 108-09; *Garrison v. Pacific NW Bell*, 45 Or. App. at 531-32; *Behrend v. Bell Tele. Co.* 242 Pa. Super. at 74-75; *Southwestern Bell Telephone Co. v. Rucker*, 537 S.W.2d at 332-33. Other jurisdictions have predicated the reasonableness of a limitation on liability on whether it purports to limit more than ordinary negligence. See *Computer Tool & Engineering v. NSP*, 453 N.W.2d at 573 (finding that limitation of liability was reasonable because it was narrowly tailored and did not attempt to exonerate power company from injuries not caused by disturbances in power, gross negligence, or willful or wanton acts); *Lee v. Consolidated Edison*, 98 Misc. 2d at 306 (exculpatory clause is reasonable "so long as the company has not attempted to absolve itself from its own willful misconduct or gross negligence").

The Kansas Court of Appeals in *Burdick v. Southwestern Bell Tel. Co.*, 9 Kan. App. 2d 182, 675 P.2d 922 (1984), addressed a similar question. Without citing *Milling Co.*, 101 Kan. 307, and *McNally Pittsburg*, 186 Kan. 709, the court held that a public utility may limit its liabilities for service interruptions but may not relieve itself of liability for its willful and wanton activity. 9 Kan. App. 2d at 184-85. The Court of Appeals noted that "[t]he general rule is that the only exception to the application of the tariff limitations is made when the defendant's conduct has been shown to be willful and wanton. [Citations omitted.]" 9 Kan. App. 2d at 184.

Early Kansas law suggests that Kansas follows the majority rule. In one of the earliest decisions on the issue, this court held that a telegraph company, as a quasi-public servant, could not limit its liability for gross negligence or willful misconduct. *Telegraph Co. v. Crall*, 38 Kan. 679, 682-83, 17 Pac. 309 (1888). Later, in *Russell*

*v. Telegraph Co.*, 57 Kan. 230, 233, 45 Pac. 598 (1896), this court noted that a common carrier may not limit its own liability for negligence and that this general rule should be applied to telegraph companies because they were engaged in the same sort of business as common carriers. However, this court upheld a 60-day limitation on the time in which claims for negligence could be brought as reasonable. 57 Kan. at 233-34.

In 1917, this court decided *Milling Co.*, discussed above. The question involved was whether a telegraph company could limit its liability for mistakes to the actual cost of the telegraph. Noting both *Russell* and *Crall*, this court held that such a limitation was not reasonable even though the claim was for ordinary negligence. 101 Kan. at 311. However, this court also noted that "reasonable limitations of liability other than those which do not seek to excuse [the company's] gross negligence have been upheld." 101 Kan. at 311.

A federal court applying Kansas law interpreted our holdings in *Milling Co.*, and *McNally Pittsburg*, in addressing the issue of utility liability limitations. In *Holman v. Southwestern Bell Telephone Company*, 358 F. Supp. 727 (D. Kan. 1973), the court considered whether a telephone company's limitation of liability in a tariff was proper. In a well-reasoned opinion, the court, after reviewing Kansas case law, concluded that a reasonable limitation on liability would be allowed but that a limitation which excluded liability for willful or wanton conduct would not be reasonable. 358 F. Supp. at 729-30.

*Holman* provides a reasonable interpretation of Kansas case law on this subject. A public utilities' liability exposure has a direct effect on its rates, and this court, as well as the majority of jurisdictions addressing the question of such a liability limitation, has concluded that it is reasonable to allow some limitation on liability such as that for ordinary negligence in connection with the delivery of the services. See *Landrum v. Florida Power & Light Co.*, 505 So. 2d at 554. However, consistent with our prior case law in *Telegraph Co. v. Crall*, 38 Kan. 679, and the law of the majority of jurisdictions which have addressed the question, any attempt to

limit liability for greater than ordinary negligence is not reasonable and, is therefore, unenforceable.

In answer to the first certified question, we conclude that it was reasonable for the KCC to allow a tariff to become effective which relieves KCP&L of liability for damages resulting from its own simple negligence in regard to the supply of electrical service. However, it was not reasonable for the KCC to allow a tariff to become effective which would relieve KCP&L of liability for damages resulting from its wanton or willful misconduct. Kansas does not recognize degrees of negligence and, thus, has no category for "gross negligence," but draws a distinction between ordinary negligence and wanton conduct, which is defined as the reckless disregard for the rights of others with a total indifference to the consequences. See *Muhn v. Schell,* 196 Kan. 713, 715, 413 P.2d 997 (1966).

Certified Question (2)

*If you find in answer to (1) above that it is reasonable for the Kansas Corporation Commission to allow a tariff to become effective which relieves KCP&L from liability for its own simple negligence, but that it is not reasonable to allow a tariff to become effective to the extent that it relieves KCP&L from liability for its willful or wanton misconduct or gross negligence, should we strike down or refuse to enforce the entire tariff, or only so much of it as purports to limit liability for gross negligence or willful or wanton misconduct, and enforce it as to simple negligence?*

A public utility tariff is to be construed in the same manner as a statute. See *Southwestern Bell Tel. Co. v. Kansas Corporation Commission,* 233 Kan. 375, Syl. ¶ 4. The fundamental rule regarding statutory construction is that the intent of the legislature governs, where it can be ascertained. *Legislative Coordinating Council v. Stanley,* 264 Kan. 690, 702, 957 P.2d 379 (1998). In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 635, 643, 941 P.2d 1321 (1997). In this case, the tariffs filed and approved are the product of input from KCP&L and the approval process of the KCC. Thus, in construing the tariffs

in question, consideration must be given to both the role and intent of the KCC in the process of approval and the intent of all participants, including the customers of KPC&L.

The KCC is empowered by the legislature with the "full power, authority and jurisdiction to supervise and control the electric public utilities." K.S.A. 66-101. To that end, the KCC must require the public utilities to furnish reasonable and effective service and to do so at just and reasonable rates. K.S.A. 1998 Supp. 66-101b.

The tariffs at issue in this case represent an attempt by the KCC to fulfill its statutory mandate. They represent a bargained-for compromise between the KCC and KCP&L with the intention of trading liability limits for a lower rate for electrical services. In establishing rates, the KCC is required to balance the public need for adequate, efficient, and reasonable service with the public utility's need for sufficient revenue to meet the cost of furnishing service and to earn a reasonable profit. As we noted above, reasonable rates are dependent in no small measure on rules limiting liability, for the broader the liability exposure, the greater the cost of electric service. See *Waters v. Pacific Telephone Co.*, 12 Cal. 3d at 7; *Landrum v. Florida Power & Light Co.*, 505 So. 2d at 554.

It is clear that the approved limits on liability in this case go too far and are inconsistent with Kansas law and public policy. Nonetheless, it is also clear that the intention of the KCC and KCP&L in establishing the tariffs was that KCP&L have some limits on its liability in return for the rates established in this case. An interpretation that voids the tariffs in their entirety would undermine the purpose of providing reasonable and effective service at reasonable rates. This is especially true where KCP&L has fulfilled its duties in providing electrical service at the established rates.

Other jurisdictions addressing this question have held that limitations on liability contained in tariffs should be enforced insofar as they are lawful and declared invalid only insofar as they seek to limit liability for greater than ordinary negligence. See *Sou. Bell Tel. Co. v. Invenchek*, 130 Ga. App. at 800-01; *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d at 603; *Behrend v. Bell Tele. Co.*, 242 Pa. Super. at 74-75. We agree and believe that such a rule is sound as a matter of law and public policy. It is clear

that KCP&L overreached in attempting to insulate itself from its own willful or wanton activity. However, what is also clear is that the rates eventually approved were in part dependent upon the utility receiving some protection from liability. Giving consideration to the role played by the KCC in the rate-making process, its intent and responsibility to insure reasonable rates to customers, and the intent of KCP&L to provide reasonable service with its need for sufficient revenue to meet the cost of furnishing service and to earn a reasonable profit, we believe it reasonable and sound public policy to interpret the tariffs in question as limiting the liability of KCP&L to its customers for its ordinary negligence only.

Therefore, in answer to the questions posed by the Missouri Court of Appeals, we hold that even though it is not reasonable to allow a tariff to become effective to the extent that it relieves KCP&L from liability for its willful or wanton misconduct, the Missouri Court of Appeals, Western District, should strike down so much of the tariffs as purport to limit liability for gross negligence or willful or wanton misconduct and enforce the tariffs as they relate to a limitation of liability for ordinary negligence only.