(675 P.2d 922)
No. 55,324

FRED BURDICK d/b/a B & G Construction and Burdick Construction, *Appellant,* v. SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellee.*

Opinion filed January 12, 1984.

*Roger C. Green,* of Green & Green, of El Dorado, for appellant.

*Ruth A. Sears,* of Southwestern Bell Telephone Co., of Topeka, and *James B. Hargrove,* of McKay, McKay & Hargrove, of El Dorado, for appellee.

Before REES, P.J., MEYER, J., and RICHARD W. WAHL, District Judge Assigned.

WAHL, J.: This is an appeal by the plaintiff, Fred Burdick, d/b/a B & G Construction and Burdick Construction, from the dismissal of his negligence and breach of contract action against the defendant, Southwestern Bell Telephone Company.

Burdick is a self-employed carpenter in El Dorado. From 1974 until December, 1980, he was engaged in business under the name of B & G Construction and had a business listing under that name with a telephone number of 316-321-9439 in the telephone book. In the latter part of 1980, Burdick renewed an agreement with Southwestern Bell Telephone Company to maintain an advertisement in the yellow pages of the telephone directory for the El Dorado vicinity and that advertisement was placed in the 1981 directory. In December, 1980, Burdick requested the telephone company to change his telephone number to 316-321-9421 to accompany a change in the name of his business to Burdick Construction. He asked if calls to his old number would be referred to the new number and was told that such a referral would be made. He did not ask, and he was not informed by the company, how long the referral would continue.

Southwestern Bell has a policy of making such referrals for a period of only sixty days unless a customer requests a longer period. If a customer has purchased directory advertising, he may obtain a referral until a new directory is issued. There is no additional charge for the referral service. Since Burdick had not requested a referral for more than the normal sixty-day period, the referral service was terminated on February 10, 1981. Burdick received no notification of the termination.

Burdick stated that nearly all of his business was initiated by telephone calls. Prior to the termination of the referral service, he received fifteen to twenty calls each week, but after the termination, he received no calls for several months. Since he had changed his business name, prospective customers who were unaware of the new name were unable to contact him, and he sustained a substantial decrease in business during 1981. Despite the dramatic reduction in telephone calls, Burdick claimed that he was unaware that the referral service had been terminated until he was informed by an acquaintance in October, 1981, that the old number was out of service. Burdick promptly contacted Southwestern Bell and requested that the referral service be restored until the end of 1981 when the 1982 tele-

phone directory containing his new number was to be issued. Southwestern Bell reinstated the referral service immediately.

Burdick filed the present action to recover damages sustained during the period when the referral service was not in operation, and framed his petition for recovery on both negligence and breach of contract theories. Southwestern Bell filed a motion to dismiss which was granted by the district court. The court held that Southwestern Bell's liability was limited by the General Exchange Tariff filed with the Kansas Corporation Commission to the amount paid during the period when service was interrupted because Burdick had not shown any willful or wanton conduct on the part of Bell. Bell was ordered to reimburse Burdick in the amount of $254.09 and the action was otherwise dismissed. We affirm the action of the district court.

The required General Exchange Tariff filed by Southwestern Bell with the Kansas Corporation Commission pursuant to K.S.A. 66-108 provides:

"24.8.3

"Interruptions of Service—The customer assumes all risk for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission, failures or defects in equipment and facilities furnished by the Telephone Company occurring in the course of furnishing service, in the telephone service or other communication services furnished him by the Telephone Company, or of the Telephone Company failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision, except as follows: If service is interrupted other than by negligence or willful act of the customer an allowance at the rate for that portion of the customer's service affected by the interruption shall be made for the time such interruption continues after the fact is reported by the customer or after detected by the Telephone Company and the interruption is for more than 24 hours. No other liability shall in any case attach to the Company in consideration of such interruptions. The Telephone Company will not be responsible for any loss or damage nor for any impairment or failure of the service arising from or in connection with the use of customer-owned facilities or equipment and not caused solely by the negligence of the Telephone Company."

The general rule is that the only exception to the application of the tariff limitations is made when the defendant's conduct has been shown to be willful and wanton. *Pilot Industries v. Southern Bell Tel & Tel Co.*, 495 F. Supp. 356 (D. S.C. 1979); *Holman v. Southwestern Bell Telephone Company*, 358 F. Supp. 727 (D. Kan. 1973); *Olson v. Mountain States Tel. & Tel. Co.*, 119 Ariz. 321, 580 P.2d 782 (1978); *Sou. Bell Tel. Co. v. Invenchek*, 130 Ga. App. 798, 204 S.E.2d 457 (1974); *Wilkinson v. New England*

*Telephone & Telegraph Co.,* 327 Mass. 132, 97 N.E.2d 413 (1951); *Warner v. Southwestern Bell Telephone Company,* 428 S.W.2d 596 (Mo. 1968); *Southwestern Bell Telephone Co. v. Rucker,* 537 S.W.2d 326 (Tex. Civ. App. 1976).

Burdick does not contend that Southwestern Bell was guilty of willful and wanton conduct, but he contends that, since the referral service was purposefully terminated after sixty days, its conduct was willful and therefore sufficient to entitle him to damages. By contending that an act which is intentionally done is done willfully, Burdick misconstrues the meaning of the word "willful" as it is used in the phrase "willful and wanton conduct."

In *Anderson, Administrator v. White,* 210 Kan. 18, 19, 499 P.2d 1056 (1972), willful conduct is defined as "action indicating a design, purpose or intent on the part of a person to do wrong or to cause an injury to another." Thus, it is apparent that an act willfully (intentionally) done in accordance with the defendant's normal procedures does not evince an intent by the defendant to cause an injury to another or to do him a wrong.

The record reveals no willful or wanton conduct on the part of Southwestern Bell nor does it show any intent by the telephone company to damage the plaintiff. The worst that Southwestern Bell did was fail to inform Burdick that the referral service was of a limited duration. If this be negligence at all, it can be no more than ordinary negligence. While Kansas no longer recognizes degrees of negligence, such as "gross" negligence, there remains a distinction between ordinary negligence and willful and wanton conduct. *Blackburn v. Colvin,* 191 Kan. 239, 380 P.2d 432 (1963).

Since Burdick has wholly failed to show willful and wanton conduct, as defined by the courts, on behalf of Southwestern Bell, he is precluded by the tariff from asserting his claim for negligence.

We turn then to Burdick's contention that a breach of contract occurred when Southwestern Bell failed to inform him that the referral service was provided only for sixty days and failed to notify him that the service was discontinued, yet all the while receiving monthly payments for the yellow pages advertisement. The district court dismissed this claim, holding the contention to be governed by the General Exchange Tariff.

The effect of the tariff provision appears never to have been before the Kansas appellate courts, but it was before the United States District Court for Kansas in *Holman v. Southwestern Bell Telephone Company,* 358 F. Supp. 727. In *Holman,* Judge O'Connor held that, unless the tariff was found to be unreasonable, it had the force and effect of law, citing *Shehi v. Southwestern Bell Telephone Company,* 382 F.2d 627 (10th Cir. 1967). 358 F. Supp. at 729. See also *Carter v. American Telephone & Telegraph Company,* 365 F.2d 486 (5th Cir. 1966), *cert. denied* 385 U.S. 1008 (1967).

We then face the issue of the reasonableness of the tariff and upon whom that determination falls. In *Milling Co. v. Postal Telegraph Co.,* 101 Kan. 307, 311, 166 Pac. 493 (1917), the Supreme Court noted that provisions which limit liability for other than gross negligence have been upheld, while provisions restricting liability to an insignificant sum when negligence was gross have been disregarded, and held:

"In conducting its intrastate business a telegraph company may make reasonable stipulations limiting its liability, but in the absence of positive or permissive statutes governing the subject, the reasonableness of any such stipulation is a question for judicial determination." Syl. ¶ 2.

Although Kansas no longer recognizes degrees of negligence, we note that the "gross negligence" concept is analogous to "willful and wanton" conduct.

In considering the reasonableness of a comparable tariff provision, the Massachusetts court ruled in *Wilkinson v. New England Telephone & Telegraph Co.,* 327 Mass. at 136:

"Because of the complexities and intricacies of the modern telephone system in which the personal element has been substantially eliminated and much if not all of the means of making usual telephone calls is left to mechanical devices, such a regulation is not unreasonable. There are so many ways by which the failures of service of which the plaintiff complains could occur that the defendant ought not to be held liable unless, as the regulation provides, such failure continued for at least twenty-four hours.

". . . This regulation is not solely a limitation of damages in case of failure of service. Its purpose is rather to limit and define the duty of the defendant to supply service. It sets out what type of service the defendant will supply and the scope of the service it undertakes to furnish. It completely covers the field."

The reasonableness of the tariff is subject to judicial determination. *Holman v. Southwestern Bell Telephone Company,* 358 F. Supp. at 729. We hold that, in the case before the court, the

tariff's limitation of the liability of Southwestern Bell is reasonable and controls the parties' dealings. To recover for breach of contract as claimed by plaintiff, it was his burden to establish the tariff's limitation of liability provision did not control the company's liability under the facts. The plaintiff did not sustain that burden, and·the trial court correctly entered judgment.

Affirmed.