**FORTE HOTELS, INC. and Forte Hotels (UK) Ltd., Appellants,**

v.

**KANSAS CITY POWER & LIGHT COMPANY, Respondent.**

No. WD 50364.

Missouri Court of Appeals, Western District.

Oct. 24, 1995.

Motion for Rehearing and/or Transfer Denied Dec. 26, 1995.

Motion for Transfer to Kansas Supreme Court Denied Dec. 26, 1995.

Application to Transfer Denied Feb. 20, 1996.

Mark V. Bodine, Wallace, Saunders, Austin, Brown and Enochs, Kansas City, for appellants.

Robert Gingrich, Kansas City, for respondent.

Before FENNER, C.J., and KENNEDY and SMART, JJ.

PER CURIAM:

Forte Hotels, Inc., and Forte Hotels (UK) Ltd. (collectively referred to as "Forte") appeal from a summary judgment in their negligence and breach of contract action against the Kansas City Power & Light Company ("KCP & L"). Forte contends that the summary judgment was improper because KCP & L's tariffs or rules for electric service do not exempt the utility from liability for its own negligence, and because KCP & L's motion for summary judgment did not address Forte's action in tort.

The summary judgment is reversed and the cause remanded.

At approximately 4:40 a.m. on March 20, 1991, one of KCP & L's underground electrical cables failed at an office building in Mission, Kansas, causing a power outage inside the building. When one of KCP & L's linemen attempted to unbolt the failed cable from the bushing where it was bolted to the

transformer, the transformer's ceramic electrical bushing broke. As a result, poly-chlorinated biphenyl (PCB) oil flowed out of the transformer and onto and under the concrete pavement inside the office building's underground garage. Because of the broken electrical bushing, the transformer had to be replaced, and the PCB oil spill had to be cleaned up to meet applicable EPA standards. Electrical service was restored at approximately 10:50 p.m. on March 20, 1991, after an outage of approximately eighteen hours.

Forte maintained a telephone reservation center inside the office building where the power outage occurred. Due to the outage, Forte was unable to operate its reservations center on March 20, 1991, and Forte subsequently filed a negligence and breach of contract action against KCP & L, seeking lost revenue, lost labor and other damages. In its petition, Forte alleged that the termination of electrical power to the office building was due to the negligence of KCP & L, and that KCP & L was also negligent in failing to make timely and efficient repairs. Forte also alleged that KCP & L breached the obligation of its service contract with either Forte or the owner of the building, and that, in the latter case, Forte was a third-party beneficiary of the contract.

KCP & L then filed a motion for summary judgment which asserted that, regardless of whether Forte's suit was treated as a tort or a contract action, the ultimate origin of the suit was in the breach of a contractual obligation. Referring to the contractual origin of the case at bar, KCP & L argued that its service contract with its customers incorporated KCP & L's tariffs or rules for electric service, and that those tariffs preclude KCP & L's liability for the type of service interruption experienced by Forte. Specifically, KCP & L cited the following rules or tariffs as barring recovery:

### 7.06 CONTINUITY OF SERVICE:

The Company will use reasonable diligence to supply continuous electric service to the Customer but does not guarantee the supply of electric service against irregularities or interruptions. The Company shall not be considered in default of its service agreement with the Customer and shall not otherwise be liable for any damages occasioned by any irregularity or interruption of electric service.

### 7.12 LIABILITY OF COMPANY

The Company shall not be considered in default of its service agreement and shall not otherwise be liable on account of any failure by the Company to perform any obligation if prevented from fulfilling such obligation by reason of any delivery delay, breakdown, or failure of or damage to facilities, an electric disturbance originating on or transmitted through electric systems with which the Company's system is interconnected, act of God or public enemy, strike, or other labor disturbance involving the Company or the Customer, civil, military or governmental authority, or any cause beyond the control of the Company.

The trial court sustained KCP & L's motion for summary judgment and Forte appeals.

■ In its first point on appeal, Forte claims that Rules 7.06 and 7.12 do not, as a matter of law, exempt KCP & L from liability under the circumstances in the case at bar, and, therefore, the trial court erred in granting a summary judgment in favor of KCP & L. Forte argues that the occurrences enumerated in Rule 7.12 indicate an intent that KCP & L be exempted from liability only when it is prevented from fulfilling its obligations by acts outside its control. Forte also argues that Rule 7.06 does not exempt KCP & L from liability because that rule only applies to acts or circumstances which cause the initial interruption in service, and Forte is claiming that KCP & L is liable for prolonging the initial interruption by various acts of negligence.

The parties agree that Kansas substantive law is applicable, so a choice of law analysis will not be undertaken. With regard to procedural issues, however, the law governing is that of the forum state, Missouri. *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 921 (Mo. App.1991).

■ Pursuant to Missouri law, the party moving for summary judgment has the burden of establishing, on the basis of facts as to

which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380. This court's review of a summary judgment is essentially de novo. *Callaway Hosp. Ass'n v. Dept. of Corr.*, 885 S.W.2d 740, 743 (Mo.App.1994).

KCP & L is entitled to summary judgment as a matter of law if its tariff provisions, Rules 7.06 and 7.12, effectively exempt KCP & L from liability for the interruption of service to Forte. Clearly, there is language in the tariff provisions which attempts to limit KCP & L's liability. Forte argues on appeal that the language of the tariff does not, in fact, limit KCP & L's liability under the circumstances of this case. It is not necessary to consider how the terms of the tariff should be interpreted, since Forte's first point can be disposed by considering whether the tariff provisions limiting KCP & L's liability are valid and enforceable in light of the law of Kansas.

■■■ Under Kansas law, public utilities are required to file with the State Corporation Commission tariffs which govern the terms and conditions of the relationship between the utility and its customers. *Southwestern Bell Tel. Co. v. State Corp. Com'n*, 233 Kan. 375, 664 P.2d 798, 800 (1983). A tariff so filed is more than a mere contract; it is the law. *Shehi v. Southwestern Bell Telephone Company*, 382 F.2d 627, 629 n. 2 (10th Cir.1967). In ruling on the enforceability of the exculpatory language in Rules 7.06 and 7.12, such provisions must be examined in light of Kansas Supreme Court decisions which find unreasonable limitations of a public utility's liability to be unenforceable.

A provision attempting to limit the liability of a public utility was first subjected to a reasonableness rule in *Shawnee Milling Co. v. Postal Telegraph Cable Co.*, 101 Kan. 307, 166 P. 493 (1917). In that case, a telegraph company attempted by contract to limit its liability for the negligent transmission of a message to the mere return of the rate charged for sending the transmission. The Kansas Supreme Court held that a public utility like a telegraph company may limit its liability, but in the absence of any positive or permissive statutes, the reasonableness of the limitation is a question for judicial determination. *Id.* 166 P. at 494–95. In determining the reasonableness of the exculpatory provision in that case, the Kansas Supreme Court considered the provision's limitation on reparation versus the potential damage to the public:

> Here the stipulated limitation is for a return of the cost of the message, probably 25 or 40 cents. All the annoyance, delay, business inconvenience, and financial damage so commonly attendant on a telegraph company's failure to perform its self-assumed public service are limited to an insignificant trifle. Here the actual damage was $265. The stipulated reparation is a few dimes.

*Id.* The Kansas Supreme Court held that the limitation of liability in that case was unreasonable and would not be applied by Kansas courts. *Id.* at 495.

In so doing, the Kansas Supreme Court noted that its ruling departed from a trend in other jurisdictions upholding such a limitation. *Id.* The courts of other states have ruled that there is nothing improper about upholding a similar public utility exculpatory provision because affordable rates are established with such a limitation in mind. *E.g., Southern Bell Tel. & Tel. Co. v. Invenchek, Inc.*, 130 Ga.App. 798, 204 S.E.2d 457, 460 (1974); *J. Meyer & Co. v. Illinois Bell Tel. Co.*, 88 Ill.App.3d 53, 42 Ill.Dec. 942, 946, 409 N.E.2d 557, 561 (1980). But while the Kansas Supreme Court acknowledged, in *Shawnee Milling Co.*, 166 P. at 494–95, that "liabilities are a proper element of consideration in rate making," it nevertheless adopted a reasonableness test. The Court found such exculpatory clauses which relieve public utilities "from exercising their employment with diligence, skill, and integrity contravene[ ] public policy as well as the law. . . ." *Id.* at 495 (quoting Jones' Telegraph and Telephone Companies (2d Ed.1916) § 317).

The Kansas Supreme Court, in *Shawnee Milling Co.*, applied the reasonableness rule to exculpatory language in a contract.

Thereafter, in *McNally Pittsburg Mfg. Corp. v. Western Union Tel. Co.*, 186 Kan. 709, 353 P.2d 199, 203–4 (1960), the Kansas Supreme Court cited *Shawnee Milling Co.* and extended its reasonableness rule to an exculpatory provision that was in the tariff itself. The *McNally* court quoted paragraph two of the court's syllabus in *Shawnee Milling Co.* which states that a telegraph company, when conducting intrastate business, can enter into agreements to reasonably limit its liability, but "in the absence of positive or permissive statutes governing the subject, the reasonableness of any such stipulation is a question for judicial determination." *McNally*, 353 P.2d at 204.

The rule of *Shawnee Milling Co.* has been cited by the Kansas Supreme Court as recently as 1976 in *Wille v. Southwestern Bell Telephone Company*, 219 Kan. 755, 549 P.2d 903, 911 (1976). It was also cited by the Kansas Court of Appeals in *Burdick v. Southwestern Bell Tel. Co.*, 9 Kan.App.2d 182, 675 P.2d 922, 924–26 (1984), which applied the reasonableness rule to a telephone company tariff that limited the utility's liability for interruptions of service to the amount paid for the service during the period of the interruption, if the interruption lasted more than twenty-four hours. The *Burdick* court found the tariff to be reasonable. *Id.* 675 P.2d at 926.

*Burdick, id.* at 925, erroneously states that there is a general rule that "the only exception to the application of the tariff limitations is made when the defendant's conduct has been shown to be willful and wanton." *Burdick* is correct that there may be such a general rule in the states whose cases it cites, but such rule is in conflict with the Kansas Supreme Court's reasonableness test of *Shawnee Milling Co.* and *McNally.* In addition, *Burdick* failed to recognize the policy of the Kansas Supreme Court in looking with disfavor on public utilities' exculpatory clauses. *Burdick,* however, is a Kansas Court of Appeals case, and to the extent that it is inconsistent with the law established by the Kansas Supreme Court, this court is obligated to follow the latter. *See Batt v. Globe Engineering Co., Inc.*, 13 Kan.App.2d 500, 774 P.2d 371, 377 (1989).

The Kansas Supreme Court has been consistent in its treatment of exculpatory provisions in cases involving public utilities. Reading *Shawnee Milling Co.* and *McNally* together, it is apparent that, when a public utility tariff is involved, it does not matter whether the limiting language appears in the contract or in the tariff—in either case, the analysis is the same. Both cases apply a rule of reasonableness, and both cases look with disfavor on contractual or tariff provisions which purport to absolve public utilities from liability for negligence. Clearly, the case at bar involves just such a tariff provision. KCP & L does not cite, and this court has not found, any statutory provision authorizing KCP & L's limitation of its liability. Consequently, the reasonableness of the tariff provision purporting to limit KCP & L's liability is a matter for judicial determination. *McNally*, 353 P.2d at 204.

In *Shawnee Milling Co.*, 166 P. at 494–95, the Kansas Supreme Court evaluated the reasonableness of an exculpatory provision by weighing the provision's limitation on reparation against the potential damage to the public utility's customers. Although Forte was not a customer of KCP & L, it alleges in its petition it was a third-party beneficiary of its landlord's contract with KCP & L and, therefore, the rule in *Shawnee Milling Co.* governs. Applying the analysis of *Shawnee Milling Co.* here, this court concludes that the KCP & L tariff provisions unreasonably limit the amount of KCP & L's liability and that the tariff provisions are therefore unenforceable. Consequently, Forte's first point on appeal is sustained.

As the ruling of Forte's first point is dispositive of the appeal, it is unnecessary to address Forte's second point. The summary judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.