**DANISCO INGREDIENTS USA, INC., Plaintiff–Respondent,**

v.

**KANSAS CITY POWER & LIGHT COMPANY, Defendant– Appellant.**

No. WD 55347.

Missouri Court of Appeals, Western District.

Sept. 14, 1999.

Robert P. Gingrich, Jr., Kansas City, for appellant.

Jeremiah D. Finnegan, Kansas City, for respondent.

Before Presiding Judge ALBERT A. RIEDERER, Judge ROBERT G. ULRICH and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant KCP & L appeals the trial court's grant of summary judgment to Plaintiff–Respondent Danisco Ingredients USA, Inc., on Danisco's claim against KCP & L for damages arising out of Danisco's loss of electrical power on three separate occasions. The trial court recognized that Rules 7.06 and 7.12 of KCP & L's General Rules and Regulations Applying to Electric Service, adopted as part of its tariff filed with and allowed to become effective by the Kansas Corporation Commission (KCC), purported to relieve KCP & L of all liability for losses caused by KCP & L's negligence or by its gross negligence or willful and wanton misconduct. The court found these disclaimers to be unenforceable as against public policy, however, and that KCP & L therefore could be held liable for Danisco's damages caused by KCP & L's negligence or willful misconduct.

KCP & L appealed, arguing that the limitations of liability contained in its tariff were valid. Because the law of Kansas is determinative of the issues pending before this Court and no controlling precedent then existed within the existing corpus of Kansas law, we certified two questions concerning the validity of these limitations to the Kansas Supreme Court under K.S.A. Section 60–3201. That Court ruled that the portions of Rules 7.06 and 7.12

contained in KCP & L's tariffs which purport to limit KCP & L's liability for its own willful and wanton misconduct are void and unenforceable as a matter of public policy, but that the rules are effective and enforceable to the extent that they limit KCP & L's liability for simple negligence. Accordingly, we reverse summary judgment for Danisco on its claim against KCP & L in Count I for simple negligence, and remand for entry of judgment in favor of KCP & L on those claims. We reverse summary judgment for Danisco on its claim against KCP & L in Count II for willful and wanton misconduct, and remand for further proceedings in the trial court on the issue whether either party is entitled to judgment on that claim under the principles set out in this opinion.

## I. FACTUAL BACKGROUND OF POWER OUTAGES

KCP & L is an electric public utility doing business in Missouri and Kansas. Danisco manufactures food additives at a production facility located in the New Century Airport, near Gardner, Kansas, and Danisco is one of KCP & L's Kansas electric customers. Danisco's production facility uses a high vacuum process which cannot tolerate even the briefest interruption of power. Danisco sued KCP & L to recover economic damages related to three power outages which occurred in 1993.

The first power outage occurred on September 2, 1993. An underground power cable failure caused a substation circuit breaker to instantly open and close, causing a "momentary" interruption.[1] KCP & L claims the reason for the underground cable failure is unknown. The second power interruption occurred on September 27, 1993. This outage was preceded by a low-voltage report from Danisco. In an effort to increase the voltage on the circuit serving Danisco's facility, KCP & L linemen undertook switching procedures to reconfigure the circuit providing service to

Danisco. During these procedures, a line switch failed in one location, and at or near the same time power monitoring equipment failed in another location. These two equipment failures resulted in an interruption in the supply of power to Danisco which lasted approximately five hours. As a result of this outage, Danisco was not able to operate its production facility for up to 80 hours.

The third interruption occurred on November 24, 1993. On that day, KCP & L claims a substation circuit breaker opened and closed for some unknown reason. Substation circuit breakers will open and close due to storms, lightning, varmints on the wires, or when electrical devices or equipment somewhere on the circuit fail.

## II. PROCEDURAL HISTORY AND CERTIFICATION PROCEEDINGS

*A. Procedural History in Trial Court.*

In an attempt to recover for economic loss and property damage caused by the interruption of its power supply, Danisco filed suit against KCP & L, claiming damages based on a "lost opportunity" to produce food additives for the periods during which the power outages occurred, and during the time period it took to restore Danisco's production line back to full operation after a power interruption. In Count I of its Petition, Danisco claimed that these damages were caused by KCP & L's negligence. In Count II of its Petition, Danisco claimed that KCP & L knew that Danisco would suffer unavoidable damages if it lost power, but willfully failed to inform it of the danger of a power outage or to protect it from such an outage.

The parties filed cross-motions for summary judgment. KCP & L argued that it had validly disclaimed liability for damages resulting from its own negligence or willful misconduct in Rules 7.06 and 7.12 of its "General Rules and Regulations Applying To Electric Service." These rules are a

---

1. A "momentary" interruption was described in KCP & L's brief and at oral argument as a power interruption which lasts less than one second.

part of its tariff and the tariff was allowed to become effective by the KCC under the power and authority the Kansas legislature gave the KCC to approve just and reasonable rates.

■ Rule 7.06 determines KCP & L's duty to supply continuous electrical energy to customers. It purports to absolve KCP & L from liability for any failure to continuously supply electrical energy, even if that failure resulted from its own negligence, for it states:

> The Company will use reasonable diligence to supply continuous electric service to the customer but does not guarantee the supply of electric service against irregularities or interruptions. The Company shall not be considered in default of its service agreement with the customer and shall not otherwise be liable for any damages occasioned by any irregularity or interruption of electric service.

Rule 7.12 determines KCP & L's liability to its customers generally. Similarly to Rule 7.06, it purports to protect KCP & L from liability for any failure to perform its obligations to deliver electric service, stating:

> The Company shall not be considered in default of its service agreement and shall not be liable on account of any failure by the Company to perform any obligation if prevented from fulfilling such obligation by reason of any delivery delay, breakdown, or failure of or damage to facilities, an electric disturbance originating on or transmitted through electric systems with which the Company's system is interconnected, act of God or public enemy, strike, or other labor disturbance involving the Company or the Customer, civil, military, or governmental authority, or any cause beyond the control of the Company.

KCP & L argued that these rules were dispositive, that the courts had no right to second guess the KCC's determination to allow these rules to become part of its tariff, and that it was entitled to judgment on all of Danisco's claims.

Danisco cross-filed for summary judgment, countering that, even though the KCC allowed these rules to become effective as a part of KCP & L's tariffs, the courts had the right and responsibility to determine the reasonableness of these limitations on liability, and that, under prior Kansas law and prior Missouri cases interpreting Kansas law, these limitations are unreasonable and cannot be given the force and effect of law because any such purported limitation of liability for KCP & L's own negligence and willful and wanton misconduct was void as against Kansas public policy.

The trial court granted summary judgment to Danisco on its claims against KCP & L, holding that the disclaimers are void as against Kansas public policy. In support, it cited this Court's decision in *Forte Hotels, Inc. v. Kansas City Power & Light Co.*, 913 S.W.2d 803 (Mo.App.1995), in which this Court held these rules unreasonable in reliance on two Kansas Supreme Court cases, *Shawnee Milling Co. v. Postal Telegraph Cable Co.*, 101 Kan. 307, 166 P. 493 (1917), and *McNally Pittsburg Mfg. Corp. v. Western Union Tel. Co.*, 186 Kan. 709, 353 P.2d 199, 204 (1960). KCP & L appealed.

*B. Appeal and Certification of Questions to Kansas Supreme Court.*

On appeal to this Court, KCP & L argued that it did not have an opportunity in *Forte Hotels* to brief the issue whether courts can determine the reasonableness of KCP & L's tariffs' liability limitations, and, if so, whether its tariffs' limitations on liability are reasonable, and that *Forte Hotels* addressed these issues *sua sponte*. KCP & L also noted that the unique and significant public policy considerations raised in imposing liability for power interruptions were not considered or discussed in either *Forte Hotels* or the telegraph cases which were cited as authority for its holding.

KCP & L further argued that *Forte Hotels* was wrong insofar as it ignored the Kansas legislature's delegation of its legislative power to and its creation of the KCC, and cited to a number of Kansas statutes as evidence of the KCC's authority. These statutes indicate that the KCC is to be given full power, authority and jurisdiction to do all things necessary and convenient for the exercise of its power. KCP & L suggested this is a sweeping indication of the legislature's intent that the KCC has all of the legislature's legal power and authority that might be required to supervise and control electric public utilities doing business in Kansas. K.S.A. 66–101. KCP & L further argued that the legislature plainly provided that any rule adopted by a utility company that is unjust and unreasonably discriminatory or preferential, in the opinion of the KCC, is unlawful and void and there is no qualification on the extent to which the KCC may make these determinations. K.S.A. 66–101b.

KCP & L also asserted the legislature expressly gave the KCC the power to make and substitute its own rules and regulations for those filed by jurisdictional utilities, if it deems any of those filed by regulated utilities to be unjust or unreasonable. K.S.A. 66–101d. In other words, KCP & L argued that, once the KCC has determined that a limitation of liability is reasonable, our only authority is to consider whether the KCC acted lawfully in so determining; we cannot ourselves consider the reasonableness of the tariff adopted.

Finally, KCP & L argued that, even if we can consider the reasonableness of the tariffs, this case is not governed by *Shawnee Milling* or *McNally* because neither these nor other Kansas cases have addressed the issue of the enforceability of a limitation of liability in the factual setting of an electrical power interruption which involves potentially tens or hundreds of thousands of customers. It argued that those states addressing the issue have held that a public utility should not be held liable for service interruptions or other related events, at least when such interruptions do not result from willful or wanton misconduct. KCP & L noted that other courts have clearly explained their rationale and justifications for upholding tariffs limiting the liability of electric public utilities, based on the fact that tariffs have been set by regulators on the assumption that such disclaimers are valid, and if they were held invalid the potential liability would make the approved rates unfair and inappropriate. *See, e.g., Landrum v. Florida Power & Light Co.*, 505 So.2d 552, 554 (Fla.App.1987); *Computer Tool & Engineering, Inc., v. Northern States Power Co.*, 453 N.W.2d 569, 573 (Minn.App.1990) (both holding tariff limiting liability for simple negligence reasonable because broad liability exposure to negligence claims would likely result in unreasonable increase in costs to utility customers).

Following our review of the issues presented in the briefs and oral argument, we determined that prior Kansas case law did not permit us to determine (1) whether the Kansas Supreme Court would find KCP & L's tariffs reasonable to the extent that they relieve KCP & L from damages resulting from simple negligence, and, if so, (2) whether it would enforce them as to claims of simple negligence, or would invalidate them entirely because of their overbreadth in purporting to also relieve KCP & L of its liability for willful or wanton misconduct. Accordingly, on November 5, 1998, we issued a Certification Order pursuant to K.S.A. Section 60–3201. That statute states:

> The Kansas supreme court may answer questions of law certified to it by ... the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the

certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Section 60–3201.

In accordance with Section 60–3203, in our Certification Order we "set forth the questions of law to be answered and a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." *Id.* We will not quote that Order in its entirety here, and instead attach it to this opinion as Appendix A. At this point, however, it would be helpful to quote the heart of the certification order, in which we stated:

> This Court rejects KCP & L's argument insofar as it claims that this Court cannot consider the reasonableness of the tariffs. Each of the Kansas cases cited above, as well as *Holman v. Southwestern Bell Tel. Co.*, 358 F.Supp. 727 (D.Kan.1973), recognize the authority and obligation of the courts to review tariffs filed with and allowed to become effective by the KCC to determine whether they come within the legislative imperative that the KCC set just and reasonable rates. Of course, this does not permit or require the courts to substitute their judgment for that of the KCC, but it does require the courts to set aside unreasonable tariffs which go beyond the authority granted to the KCC.
>
> We also reject KCP & L's argument to the extent that it claims that the Kansas courts would uphold the tariff even in the face of willful and wanton misconduct. Every case cited above has noted approvingly the rule that a utility cannot limit its liability for its own gross negligence or willful or wanton misconduct. Even *Burdick* [*v. Southwestern Bell Tel. Co.*, 9 Kan.App.2d 182, 675 P.2d 922 (1984) ] noted that the case before it did not involve willful misconduct, just simple negligence. Controlling precedent thus requires us to conclude that

the tariffs are invalid to the extent that they purport to relieve the company of liability for gross negligence or willful and wanton misconduct. Moreover, as Danisco noted in its letter addressing certification, at least one other Kansas utility, Kansas Power & Light, does exclude willful or wanton misconduct from its limitation of liability provision and the KCC has approved that tariff also.

In light of the additional briefing on this issue in this case, briefing which was not available in *Forte Hotels*, however, we agree with KCP & L that the public policy considerations which will determine the reasonableness of KCP & L's limitation of liability for simple negligence in this case, involving an electric utility serving hundreds of thousands of customers, are different than those which were at issue in *Shawnee Milling* and *McNally*. We continue to believe that *Burdick* misinterpreted the latter two cases, and that it is inadequate to guide us in our resolution of the instant case.

We are unsure whether, if confronted with this case today, the Kansas Supreme Court would hold the principles of *Shawnee Milling* and *McNally* are directly applicable, and so would hold any provision wholly relieving KCP & L from liability for negligence invalid, or whether it would hold that it is permissible for a Kansas electric utility such as KCP & L to be governed by a tariff which relieves it of liability for its own simple negligence in light of the different policy issues involved with modern day electric utilities. If the Kansas Supreme Court determines that a limitation on liability for simple negligence is valid, but one for willful and wanton misconduct is invalid, we are also unsure whether it would find the proper remedy is to strike down the entire tariff, or only so much of it as purports to limit liability for gross negligence or willful or

wanton misconduct, and enforce it as to simple negligence.

Appendix A, Certification Order at 12–13.

Because we determined that these issues presented significant issues of state law as to which no controlling Kansas precedent existed to guide our decision, and that these issues would be determinative of Danisco's cause of action against KCP & L, we certified the following two issues to the Kansas Supreme Court:

> (1) Was it unreasonable for the Kansas Corporation Commission to allow KCP & L's Rules 7.06 and 7.12 to become effective insofar as these Rules relieve KCP & L of liability for damages of any nature resulting from the utility's own (a) simple negligence, or (b) willful or wanton misconduct, or gross negligence, in regard to the supply of electric service.

(2) If you find in answer to (1) above that it is reasonable for the Kansas Corporation Commission to allow a tariff to become effective which relieves KCP & L from liability for its own simple negligence, but that it is not reasonable to allow a tariff to become effective to the extent that it relieves KCP & L from liability for its willful or wanton misconduct or gross negligence, should we strike down or refuse to enforce the entire tariff, or only so much of it as purports to limit liability for gross negligence or willful or wanton misconduct, and enforce it as to simple negligence?

*C. Response to Certification by Kansas Supreme Court.*

On July 12, 1999, the Kansas Supreme Court issued its opinion answering the questions certified to it by this Court. A copy of the entire ruling may be found at *Danisco Ingredients USA, Inc. v. Kansas Power & Light Company,* 267 Kan. 76, 986 P.2d 377 (1999). After setting out the background of the case, the facts regarding our certification of two issues to it, and the applicable rules in KCP & L's tariffs, the Kansas Supreme Court stated:

Generally, other jurisdictions have held that rules promulgated by public utilities which absolve them from liability for simple negligence in the delivery of their services are reasonable and will be upheld .... [citations omitted] ... The theory underlying the enforcement of liability limitations is that because a public utility is strictly regulated its liability should be defined and limited so that it may be able to provide service at reasonable rates....

The same cannot be said, however, where the promulgated rules purport to limit liability beyond that caused by ordinary negligence....

....

... A public utilit[y]s' liability exposure has a direct effect on its rates, and this court, as well as the majority of jurisdictions addressing the question of such a liability limitation, has concluded that it is reasonable to allow some limitation on liability such as that for ordinary negligence in connections with the delivery of services. See *Landrum v. Florida Power & Light Co.,* 505 So.2d at 554. However, consistent with our prior case law in *Telegraph v. Crall,* 38 Kan. 679 [17 Pac. 309 (1888)], and the law of the majority of jurisdictions which have addressed the question, any attempt to limit liability for greater than ordinary negligence is not reasonable and, is therefore, unenforceable.

*Danisco,* at 383–385.

The Kansas Supreme Court accordingly held that, in response to our first certified question:

It was reasonable for the KCC to allow a tariff to become effective which relieves KCP & L of liability for damages resulting from its own simple negligence in regard to the supply of electrical service. However, it was not reasonable for the KCC to allow a tariff to become effective which would relieve KCP & L of liability for damages

resulting from its wanton or willful misconduct.

*Id.*, at 385.

In response to our second certified question, the Kansas Supreme Court found that it was the intent of the KCC and KCP & L to put some limitations on KCP & L's liability in return for establishment of rates at certain levels, and that "an interpretation that voids the tariffs in their entirety would undermine the purpose of providing reasonable and effective service at reasonable rates." *Id.*, at 386. Thus, while the court found "it is clear that KCP & L overreached in attempting to insulate itself from its own willful or wanton activity ... what is also clear is that the rates eventually approved were in part dependent upon the utility receiving some protection from liability ... [therefore] we believe it reasonable and sound public policy to interpret the tariffs in question as limiting the liability of KCP & L to its customers for its ordinary negligence only." *Id.* The court thus concluded:

> Therefore, in answer to the questions posed by the Missouri Court of Appeals, we hold that even though it is not reasonable to allow a tariff to become effective to the extent that it relieves KCP & L from liability for its willful or wanton misconduct, the Missouri Court of Appeals, Western District, should strike down so much of the tariffs as purport to limit liability for ordinary gross negligence or willful or wanton misconduct and enforce the tariffs as they relate to a limitation of liability for ordinary negligence only.

*Id.* at 386.

In accordance with the Kansas Supreme Court's response to our certified questions, we hold that the trial court did not err insofar as it held invalid KCP & L's purported disclaimer of its liability for willful and wanton misconduct. Such a disclaimer is not reasonable or enforceable under Kansas law. However, the trial court did err in refusing to give effect to so much of the tariff as disclaimed liability for KCP & L's own simple negligence. The Kansas Supreme Court has held that such a disclaimer is reasonable and sound public policy in light of the oversight provided by the KCC and the KCC's intent and responsibility to insure reasonable rates for reasonable service. The Kansas Supreme Court has also held that it would give effect to such a disclaimer of liability for ordinary negligence even though contained in a tariff that purported to also disclaim liability for willful and wanton misconduct. To the extend our decision in *Forte Hotels* holds to the contrary, it is no longer to be followed.

■ For these reasons, we hold the disclaimers of liability contained in Rules 7.06 and 7.12 are valid and enforceable insofar as they disclaim liability for simple negligence, but we find them to be void and unenforceable, as against public policy, insofar as they purport to limit KCP & L's liability for its own willful and wanton misconduct. Accordingly, we reverse summary judgment for Danisco on its claims against KCP & L in Count I for simple negligence, and remand for entry of judgment in favor of KCP & L on those claims in accordance with this opinion. We also reverse summary judgment for Danisco on its claim against KCP & L in Count II for willful and wanton misconduct, as it is not clear from the court's order whether it reached the factual basis for that claim or merely entered judgment based on its belief that no disclaimer of liability was valid, and remand for further proceedings in the trial court in accordance with this opinion on the issue whether either party is entitled to judgment on that claim.[2]

---

2. The parties have apparently effected a partial or contingent settlement dependent on who prevails on appeal on the issue of KCP & L's liability for economic damages. Although

Danisco raised issues about the effect on this settlement of certain changes made by KCP & L in its tariffs since the argument of this case, neither those changes nor the meaning or

Judge ROBERT G. ULRICH and Presiding Judge ALBERT A. RIEDERER, concur.

## APPENDIX A

### MISSOURI COURT OF APPEALS

### WESTERN DISTRICT

DANISCO INGREDIENTS USA, INC., Plaintiff–Respondent,

vs.

KANSAS CITY POWER & LIGHT COMPANY, Defendant–Appellant.

WD 55347

**CERTIFICATION ORDER**

Pursuant to K.S.A. 60–3201 *et seq.*, this Court, upon its own motion, hereby certifies to the Kansas Supreme Court two related questions of Kansas law which are involved in this proceeding, which may be determinative of this cause, and as to which it appears to this certifying court that there is no controlling precedent in the decisions of the Kansas Supreme Court and Kansas Court of Appeals.

To place the questions in context, we note that the parties' disagreement concerns the validity and enforceability of Rules 7.06 and 7.12 of Kansas City Power & Light's (KCP & L's) General Rules and Regulations Applying to Electric Service. Those Rules are contained in KCP & L's tariffs filed with the Kansas Corporation Commission (KCC) and have been allowed to become effective by the KCC. The Rules purport to relieve KCP & L from all liability for damages caused by power outages and other failures or breakdowns in service, without exception for damages caused by the utility's own negligence or for damages caused by its willful or wanton misconduct. For the reasons dis-

cussed in Section III, *infra*, this Court concludes that, under prior Kansas decisions, we have the authority to determine whether KCP & L's Rules are unreasonable and therefore unenforceable, despite the fact that they have been allowed to become effective by the KCC. This Court also concludes that these Rules are unreasonable, under prior Kansas decisions, to the extent they purport to relieve KCP & L from damages resulting from the company's willful and wanton misconduct or what is sometimes referred to as "gross negligence." This Court is unable to determine, however, whether the Kansas Supreme Court (1) would find these tariffs reasonable to the extent that they relieve KCP & L from damages resulting from simple negligence, and, if so, (2) whether it would enforce them as to claims of simple negligence, or would invalidate them entirely because of their overbreadth in purporting to also relieve KCP & L of its liability for willful or wanton misconduct. We therefore certify the following related issues to the Kansas Supreme Court:

(1) Was it unreasonable for the Kansas Corporation Commission to allow KCP & L's Rules 7.06 and 7.12 to become effective insofar as these Rules relieve KCP & L of liability for damages of any nature resulting from the utility's own (a) simple negligence, or (b) willful or wanton misconduct, or gross negligence, in regard to the supply of electric service.

(2) If you find in answer to (1) above that it is reasonable for the Kansas Corporation Commission to allow a tariff to become effective which relieves KCP & L from liability for its own simple negligence, but that it is not reasonable to allow a tariff to become effective to the extent that it relieves KCP & L from liability for its willful or wanton misconduct or gross negligence,

application of the settlement to the present posture of this case, in which we have held that KCP & L is not liable for simple negligence but can be liable for willful and wanton misconduct, if proved, are properly before us

on this appeal, and we decline to address them. The trial court may, on remand, address the settlement issue and other issues which may arise.

should we strike down or refuse to enforce the entire tariff, or only so much of it as purports to limit liability for gross negligence or willful or wanton misconduct, and enforce it as to simple negligence?

## I. JURISDICTIONAL STATEMENT

KCP & L supplies Danisco Ingredients, Inc. (hereinafter "Danisco") with electrical power. Danisco sued KCP & L in the Circuit Court of Jackson County, Missouri for negligence and willful and wanton misconduct arising out of Danisco's loss of electrical power on three separate occasions. Danisco's petition raises no constitutional challenges, and the case does not present any issue within the exclusive jurisdiction of the Missouri Supreme Court. Therefore, this case falls within the general appellate jurisdiction of the Missouri Court of Appeals, pursuant to Article V, Section 3 of the Missouri Constitution. Jackson County is within the Western District of the Missouri Court of Appeals, and thus the case is properly before this Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In accordance with K.S.A. 60–3203, the Court sets forth the following statement of relevant facts.

KCP & L is an electric public utility doing business in Missouri and Kansas. Danisco manufactures food additives at a production facility located in the New Century Airport, near Gardner, Kansas, and Danisco is one of KCP & L's Kansas electric customers. Danisco's production facility uses a high vacuum process which cannot tolerate even the briefest interruption of power. Danisco sued KCP & L to recover its economic damages related to three power outages which occurred in 1993.

The first power outage occurred on September 2, 1993. An underground power cable failure caused a substation circuit breaker to instantly open and close, caus-

ing a "momentary" interruption.[3] KCP & L claims the reason for the underground cable failure is unknown.

The second power interruption occurred on September 27, 1993. This outage was preceded by a low-voltage report from Danisco. In an effort to increase the voltage on the circuit serving Danisco's facility, KCP & L linemen undertook switching procedures to reconfigure the circuit providing service to Danisco. During these procedures, a line switch failed in one location, and at or near the same time power monitoring equipment failed in another location. These two equipment failures resulted in an interruption in the supply of power to Danisco which lasted approximately 5 hours. As a result of this outage, Danisco was not able to operate its production facility for up to 80 hours.

The third interruption occurred on November 24, 1993. On that day, KCP & L claims a substation circuit breaker opened and closed for some unknown reason. Substation circuit breakers will open and close due to storms, lightning, varmints on the wires, or when electrical devices or equipment somewhere on the circuit fail.

As a result of these interruptions of power, Danisco claims damages based on "lost opportunity" to produce food additives for the period during the power outages, as well as the time period it took to restore Danisco's production line back to full operation after a power interruption. In Count I of its Petition, Danisco claims that these damages were caused by KCP & L's negligence. In Count II of its Petition, Danisco claims that KCP & L knew that Danisco would suffer unavoidable damages if it lost power, but willfully failed to inform it of the danger of a power outage or to protect it from such an outage. Although Danisco claims lost profits in the amount of $253,271.75, a contingent settlement has apparently been reached below, with the result that, if the courts

---

**3.** A "momentary" interruption was described in appellant's brief and at oral arguments as a

power interruption which lasts less than 1 second.

uphold the determination below that KCP & L's limitation on liability is unenforceable, then KCP & L will pay the sum of $100,000.00 in damages to Danisco.

KCP & L argues that at all times relevant in this case, it had on file as part of its tariff "General Rules and Regulations Applying To Electric Service" which had been allowed to become effective by the KCC under the power and authority the Kansas legislature gave the KCC to approve just and reasonable rates. KCP & L argues that, once allowed to become effective, these tariffs, including KCP & L's General Rules 7.06 and 7.12, are entitled to be given the force and effect of law and that these rules limit KCP & L's liability for power service interruptions. Rule 7.06 determines KCP & L's duty to supply continuous electrical energy to customers. It provides that:

> The Company will use reasonable diligence to supply continuous electric service to the customer but does not guarantee the supply of electric service against irregularities or interruptions. The Company shall not be considered in default of its service agreement with the customer and shall not otherwise be liable for any damages occasioned by any irregularity or interruption of electric service.

Rule 7.12 determines KCP & L's liability to its customers generally. It provides that:

> The Company shall not be considered in default of its service agreement and shall not be liable on account of any failure by the Company to perform any obligation if prevented from fulfilling such obligation by reason of any delivery delay, breakdown, or failure of or damage to facilities, an electric disturbance originating on or transmitted through electric systems with which the Company's system is interconnected, act of God or public enemy, strike, or other labor disturbance involving the Company or the Customer, civil, military, or govern-

mental authority, or any cause beyond the control of the Company.

The trial court held that these limitations of liability were unreasonable and, so, unenforceable and invalid, citing to this Court's decision in *Forte Hotels, Inc. v. Kansas City Power & Light Company*, 913 S.W.2d 803 (Mo.App.1995). In that case, this Court did hold these rules unreasonable in reliance on two Kansas Supreme Court cases, *Shawnee Milling Co. v. Postal Telegraph Cable Co.*, 101 Kan. 307, 166 P. 493 (1917), and *McNally Pittsburg Mfg. Corp. v. Western Union Tel. Co.*, 186 Kan. 709, 353 P.2d 199, 204 (1960). On appeal, KCP & L claims that these issues were not properly decided in *Forte Hotels*, that under Kansas law the trial court should have given the force and effect of law to KCP & L's Rules limiting its liability herein, and that the trial court erred in substituting its judgment for that of the KCC by refusing to find KCP & L's continuity and liability rules reasonable and enforceable under the facts of this case.

### III. SUMMARY OF LEGAL ISSUES PRESENTED

The two Kansas Supreme Court decisions which most directly address the issues in this case are those just noted, *Shawnee Milling Co. v. Postal Telegraph Cable Co.* and *McNally Pittsburg Mfg. Corp. v. Western Union Tel. Co.*

*Shawnee Milling* concerned a tort action against a telegraph company for damages resulting from its negligent transmission of an intrastate telegraph, with the result that a company was believed to have accepted an offer of only 6,000 rather than 10,000 bushels of wheat. The telegraph company said it was not liable for the resulting damages because the sender had only paid for an unrepeated telegram, rather than one which would repeat the message. The telegraph form purported to limit the company's liability for errors in unrepeated telegrams to the cost of the telegram. The Kansas Supreme Court recognized that other authorities had up-

held the right of a telegraph company to limit its liability for simple as opposed to gross negligence, and acknowledged that regulatory authorities were likely to have considered the existence of such limitations in setting rates. The Court nonetheless found this limitation of liability constituted an unreasonable limitation of the telegraph company's liability for its own negligence because it sought to relieve the company of the obligation to perform its duties with diligence, skill and integrity, and thus violated public policy. 166 P. at 494–95.

The Kansas Supreme Court reaffirmed and extended the principles set out in *Shawnee Milling* to an exculpatory provision contained in the tariff itself in *McNally Pittsburg Mfg. Corp. v. Western Union Tel. Co.*, 353 P.2d at 203–04. *McNally* concerned the liability of a telegraph company for negligent transmission of the wrong bid price by a contractor, who consequently had to complete the contract at a lower bid than was intended. The company attempted to apply its tariff limiting its liability to the cost of the telegram. Relying on *Shawnee Milling*, *McNally* first noted that the courts have the right to determine the reasonableness of a utility's purported limitations on its liability because the utility's right to limit its liability depends on the legislature's grant of explicit power to do so. It held that, in the absence of such specific grant of legislative power to do so, the KCC could not adopt tariffs allowing a utility to limit its liability for the transmission of particular types of telegrams. It therefore found the KCC had acted in excess of its legislative authority in adopting tariffs limiting the liability of the telegraph company in the case before it. In so doing, it noted that, in this regard, the KCC is more limited in its power than is the FCC in regard to interstate commerce. *McNally*, 353 P.2d at 204.

*Shawnee Milling Co.* was cited by the Kansas Supreme Court as recently as 1976 in *Wille v. Southwestern Bell Telephone Company*, 219 Kan. 755, 549 P.2d 903, 911 (1976). *Wille* held that the rule set out in *Shawnee Milling* did not prohibit a telephone company from entering into a contract limiting its liability for erroneous listing of a company in a telephone book to the cost of the listing. However, *Wille* specifically noted that there was no indication of gross negligence or willful or wanton misconduct in the case before it, and also noted that the case before it involved only a private contract duty, not a duty to the public such as the duty of a telegraph company to transmit messages. It thus implicitly approved, but limited, *Shawnee Milling*.

The Kansas Court of Appeals also interpreted and applied *Shawnee Milling* to a tariff purporting to limit a telephone company's liability in *Burdick v. Southwestern Bell Tel. Co.*, 9 Kan.App.2d 182, 675 P.2d 922, 924–26 (1984). *In Burdick*, the court examined the reasonableness of a telephone company's tariff that limited the utility's liability for interruptions of service to the amount paid for the service during the period of the interruption; the tariff only provided for even that reimbursement if the interruption lasted more than twenty-four hours. *Burdick* opined that *Shawnee Milling* and *McNally* had only held that limitations of liability for gross negligence were invalid, and that since the telephone company limitation before it did not apply to gross negligence, but just to simple negligence, it was reasonable and valid. *Burdick*, 675 P.2d at 926.

This Court examined the decisions in *Burdick*, *Shawnee Milling* and *McNally* in *Forte Hotels, Inc. v. Kansas City Power & Light Company*, 913 S.W.2d 803 (Mo.App. 1995). *Forte Hotels*, like this case, involved the enforceability of the exculpatory language contained in KCP & L's Rules 7.06 and 7.12. We held in *Forte Hotels* that, under *Shawnee Milling* and *McNally*, Kansas public utilities are required to file with the KCC tariffs which govern the terms and conditions of the relationship

between the utility and its customers, and that the courts may interpret the reasonableness of these tariffs. *Id.* at 805, *citing, Southwestern Bell Tel. Co. v. State Corp. Com'n,* 233 Kan. 375, 664 P.2d 798, 800 (1983).

We then turned to an examination of Rules 7.06 and 7.12 themselves, noting that we must determine whether the Kansas courts would find them reasonable under the principles set out in prior Kansas appellate court decisions applying Kansas law. We disagreed with *Burdick* that *Shawnee Milling* and *McNally* had held only that tariffs which purport to limit a utility's liability for gross negligence or willful or wanton misconduct were unreasonable. *Forte Hotels,* 913 S.W.2d at 806. We held that, to the contrary, in *Shawnee Milling* and *McNally* the Kansas Supreme Court had held that tariffs purporting to limit liability for the utility's own negligence were looked at with disfavor. *Forte Hotels,* 913 S.W.2d at 805. To the extent *Burdick* was inconsistent with the law established by the Kansas Supreme Court, we held that we were obligated to follow the decisions of the Kansas Supreme Court. *Forte Hotels,* 913 S.W.2d at 806, *citing, Batt v. Globe Engineering Co., Inc.,* 13 Kan.App.2d 500, 774 P.2d 371, 377 (1989). Accordingly, we held:

> The Kansas Supreme Court has been consistent in its treatment of exculpatory provisions in cases involving public utilities. Reading *Shawnee Milling Co.* and *McNally* together, it is apparent that, when a public utility tariff is involved, it does not matter whether the limiting language appears in the contract or in the tariff—in either case, the analysis is the same. Both cases apply a rule of reasonableness, and both cases look with disfavor on contractual or tariff provisions which purport to absolve public utilities from liability negligence. Clearly, the case at bar involves just such a tariff provision. KCP & L does not cite, and this court has not found,

any statutory provision authorizing KCP & L's limitation of its liability. Consequently, the reasonableness of the tariff provision purporting to limit KCP & L's liability is a matter for judicial determination.

*Forte Hotels,* 913 S.W.2d at 806, *citing, McNally,* 353 P.2d at 204. We concluded that KCP & L's tariff provisions unreasonably limited the amount of KCP & L's liability under the principles set out in *Shawnee Milling* and *McNally,* and that the tariff provisions were therefore unenforceable.

In the case presently before this Court, KCP & L argues that it did not have an opportunity in *Forte Hotels* to brief the issues of whether courts can determine the reasonableness of KCP & L's tariffs' liability limitations, and, even if courts can do so, whether its tariffs limitations on liability are reasonable, and that *Forte Hotels* addressed these issues *sua sponte.* KCP & L also notes that the unique and significant public policy considerations raised in imposing liability for power interruptions were not considered or discussed in either *Forte Hotels,* or in the telegraph cases which were cited as authority for its holding.

KCP & L further argues that *Forte Hotels* was wrong insofar as it ignored the Kansas legislature's delegation of its legislative power to and its creation of the KCC. KCP & L cites to a number of Kansas statutes as evidence of the KCC's authority. These statutes indicate that the KCC is to be given full power, authority and jurisdiction to do all things necessary and convenient for the exercise of its power. KCP & L suggests this is a sweeping indication of the legislature's intent that the KCC has all of the legislature's legal power and authority that might be required to supervise and control electric public utilities doing business in Kansas. K.S.A. 66–101. KCP & L further argues that the legislature plainly provided that any utility rule that is unjust and unreasonably discriminatory or preferential, in

the opinion of the KCC, is unlawful and void and there is no qualification on the extent to which the KCC may make these determinations. K.S.A. 66–101b. KCP & L also asserts the legislature expressly gave the KCC the power to make and substitute its own rules and regulations for those filed by jurisdictional utilities, if it deems any of those filed by regulated utilities to be unjust or unreasonable. K.S.A. 66–101d. In other words, KCP & L argues that, once the KCC has determined that a limitation of liability is reasonable, our only authority is to consider whether the KCC acted lawfully in so determining; we cannot ourselves consider the reasonableness of the tariff adopted.

In addition, KCP & L argues that, even if we can consider the reasonableness of the tariffs, this case is not governed by *Shawnee Milling* or *McNally* because neither these nor other Kansas courts have addressed the issue of the enforceability of a limitation of liability in the factual setting of an electrical power interruption which involves potentially tens or hundreds of thousands of customers. It argues that those states addressing the issue have held that a public utility should not be held liable for service interruptions or other related events, at least when such interruptions do not result from willful or wanton misconduct. KCP & L notes that courts have clearly explained their rationale and justifications for upholding tariffs limiting the liability of electric public utilities. KCP & L quotes from *Landrum v. Florida Power & Light Co.*, 505 So.2d 552, 554 (Fla.App.1987), in which the court stated (emphasis added by KCP & L):

> It is well established that a limitation of liability contained in a tariff is an essential part of the rate, and that the consumer is bound by the tariff regardless of his knowledge or assent thereto. [Citations omitted.]
>
> ... *The justification for an electric company filing a tariff, as in this case with the Public Service Commission, is to regulate the rate practices for the services furnished.* [Citation omitted.] As stated by the United States Supreme Court, "[f]or all we know, it may be that the rate specified in the relevant tariff is computed on the understanding that the exculpatory clause shall apply to relieve the [utility] of the expense of insuring itself against liability for damage ... and is a reasonable rate so computed." *Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 418, 79 S.Ct. 1210, 1215, 3 L.Ed.2d 1334, 1340–41 (1959). *Therefore, a tariff validly approved by the Public Service Commission, including a limitation of liability for ordinary negligence, resulting in the interruption of the regular supply of electric service, is valid.* [Citations omitted.]

KCP & L also cites to *Computer Tool & Engineering, Inc. v. Northern States Power Co.*, 453 N.W.2d 569, 573 (Minn.App. 1990), where the court held (emphasis added by KCP & L):

> The commission is directed to balance the public need for adequate, efficient and reasonable service, on the one hand, against the need for the public utility for sufficient revenue to meet the cost of furnishing service and earn a reasonable profit. [Citation omitted.] Making these determinations and weighing the needs of the public against those of the public utility is a task suited for the commission because of its expertise in this specialized area. *The Commission could find the tariff reasonable where, absent the limitation, the broad liability exposure would invariably raise the costs and rates for electric service.* [Citation omitted.]

KCP & L argues that, if the case were before it, the Kansas Supreme Court would recognize the above policy considerations, limit the holdings of *Shawnee Milling* and *McNally,* and uphold the tariff regulations at issue in this case limiting KCP & L's liability for negligent interruptions of power service. Although KCP &

L does not directly address the allegations of willful and wanton misconduct in Count II below, it apparently argues that the limitation of liability would be held valid even as to such misconduct.

This Court rejects KCP & L's argument insofar as it claims that this Court cannot consider the reasonableness of the tariffs. Each of the Kansas cases cited above, as well as *Holman v. Southwestern Bell Tel. Co.*, 358 F.Supp. 727 (D.Kan.1973), recognize the authority and obligation of the courts to review tariffs filed with and allowed to become effective by the KCC to determine whether they come within the legislative imperative that the KCC set just and reasonable rates. Of course, this does not permit or require the courts to substitute their judgment for that of the KCC, but it does require the courts to set aside unreasonable tariffs which go beyond the authority granted to the KCC.

We also reject KCP & L's argument to the extent that it claims that the Kansas courts would uphold the tariff even in the face of willful and wanton misconduct. Every case cited above has noted approvingly the rule that a utility cannot limit its liability for its own gross negligence or willful or wanton misconduct. Even *Burdick* noted that the case before it did not involve willful misconduct, just simple negligence. Controlling precedent thus requires us to conclude that the tariffs are invalid to the extent that they purport to relieve the company of liability for gross negligence or willful and wanton misconduct. Moreover, as Danisco noted in its letter addressing certification, at least one other Kansas utility, Kansas Power & Light, does exclude willful or wanton misconduct from its limitation of liability provision and the KCC has approved that tariff also.

In light of the additional briefing on this issue in this case, briefing which was not available in *Forte Hotels*, however, we agree with KCP & L that the public policy considerations which will determine the reasonableness of KCP & L's limitation of liability for simple negligence in this case, involving an electric utility serving hundreds of thousands of customers, are different than those which were at issue in *Shawnee Milling* and *McNally*. We continue to believe that *Burdick* misinterpreted the latter two cases, and that it is inadequate to guide us in our resolution of the instant case.

We are unsure whether, if confronted with this case today, the Kansas Supreme Court would hold the principles of *Shawnee Milling* and *McNally* are directly applicable, and so would hold any provision wholly relieving KCP & L from liability for negligence invalid, or whether it would hold that it is permissible for a Kansas electric utility such as KCP & L to be governed by a tariff which relieves it of liability for its own simple negligence in light of the different policy issues involved with modern day electric utilities. If the Kansas Supreme Court determines that a limitation on liability for simple negligence is valid, but one for willful and wanton misconduct is invalid, we are also unsure whether it would find the proper remedy is to strike down the entire tariff, or only so much of it as purports to limit liability for gross negligence or willful or wanton misconduct, and enforce it as to simple negligence.

This Court determines that these questions present significant issues of state law as to which no controlling Kansas precedent exists to guide our decision. Furthermore, these questions will be determinative of Danisco's cause of action for negligent and willful and wanton interruption of power service against KCP & L. Accordingly, we certify these issues to the Kansas Supreme Court. We ask that court to inform this court which, if any, parts of the record this court should forward to it for its use in resolving these issues. In the interest of an expeditious

Robert G. Ulrich, Judge

resolution of this case, we request that briefing proceed according the Kansas Supreme Court's general rules of procedure, and that the parties not be given extensions of time for filing their briefs in that court.

Laura Denvir Stith, Judge

Albert A. Riederer, Presiding Judge